133 Ill. App.2d 694 (1971)
272 N.E.2d 439
WESTERN STATES MUTUAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
CONTINENTAL CASUALTY COMPANY, Defendant-Appellee  (HARDWARE MUTUAL CASUALTY COMPANY, Defendant-Appellant, and DIANE TAYLOR et al., Defendants-Appellees.)
No. 70-55.
Illinois Appellate Court  Second District.
July 27, 1971.
Rehearing denied August 31, 1971.
*695 McKenna, Storer, Rowe, White & Haskell, of Wheaton, Eugene J. Farrug, of counsel,) for appellant.
Donald W. Ford, of Wheaton, for appellee.
Judgment affirmed.
Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:
This appeal is from a declaratory judgment action, filed in the Circuit Court of Du Page County, by Western States Mutual Insurance Company, hereinafter referred to as Western States, insurer of the driver of a non-owned vehicle, against Hardward Mutual Casualty Company, hereinafter referred to as Hardware. The trial court found that Hardware, insurer of the vehicle involved, owed the duty to defend and indemnify the operator of the vehicle, under the owner policy. Western States' policy contained a standard "excess" clause for non-owned automobiles. Hardware's policy contained an "escape" or "no liability" clause. Hardware has appealed from the judgment in favor of Western States.
The issues are: (1) Did the trial court properly find, based upon depositions, that the driver had the implied permission of the owner at the time of the occurrence; (2) Which insurer owed the duty to defend and indemnify the driver where the owner's policy contained an "escape" clause and the driver's policy contained an "excess" clause.
The Complaint for Declaratory Judgment filed on March 25, 1969, by Western States alleged that it issued its insurance policy to George D. Hull; that the defendant, Hardware, issued its policy to Al Piemonte Ford, hereinafter referred to as the Ford agency; that defendant, Continental Casualty Company issued its policy to Crawford and Company and/or Harry Crawford, Sr., d/b/a Crawford and Company. The complaint further alleged that about April 12, 1968, George A. Hull, the son of George D. Hull, was operating an automobile owned by the Ford agency and leased or billed to Harry Crawford, Jr., and was doing so with the permission, consent and knowledge of Harry Crawford, Sr.; that *696 the purpose of the trip was to take Mark Crawford (a son) home; that Diane Taylor was a passenger on a motorcycle, driven by John Murphy, when an accident occurred with the vehicle driven by George A. Hull, and that thereafter a lawsuit was filed by John Murphy, a minor, by his father, against George A. Hull, Harry Crawford, Sr., Mark Crawford and Al Piemonte Ford. Further allegations are that a conflict has arisen between the plaintiff, as the alleged insurer of George D. Hull, and Continental Casualty Company, alleged insurer of the Crawfords, and Hardware, alleged insurer of the Ford agency; and that the plaintiff has tendered the defense of George A. Hull, driver of the vehicle in question, to Hardware and Continental Casualty, and the tender was refused.
Hardware filed its answer, admitted that the car involved was owned by the Ford agency and that it was the agency's insurer. Defendant Hardware denied that permission was granted to Harry Crawford, Sr., or anyone acting in his behalf, to use the automobile involved. Hardware also set out an affirmative defense alleging that the policy of insurance issued by Hardware to the Ford agency provides that:
"Any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile Hazard, provided in his actual operation or (if he is not operating) his other actual use thereof, is within the scope of such permission * * *."
and that none of the Crawfords had permission of the named insured (the Ford agency) to use the subject automobile. The affirmative defense further states:
"That the policy of insurance in question issued by Hardware to the insured Al Piemonte Ford, contains an endorsement A.G. 8 entitled Limited Coverage for Certain Insureds which provides:
`In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that the garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions.
(1) If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.
(2) If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages *697 up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.
(3) If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit.
(4) As used in this endorsement:
"Garage customer" means any person other than
(1) an employee, director, stockholder, partner, or member of the named insured or a resident of the same household as the named insured, such employee, director, stockholder, partner or member.'"
and concludes that there is other valid and collectible insurance available to George A. Hull and the Crawfords.
The trial court found after briefs were submitted, together with depositions, that Hardware owed the duty of extending coverage and a defense to George A. Hull, as the primary insurer, and dismissed the affirmative defense of Hardware; that Western States, under its policy issued to George A. Hull, is secondary or excess as to the policy of Hardware Mutual; that Continental Casualty's policy issued to Crawford and Company has no force in effect and is inapplicable to the occurrence and entered judgment accordingly. Hardware, alone, has appealed.
The first issue we consider is whether the driver had implied permission of the owner at the time of the occurrence, or otherwise stated, was the driver, George A. Hull, a permittee under the omnibus clause of Hardware's insurance policy. The "omnibus clause" of a policy for automobile liability insurance is that clause which extends coverage to other persons in addition to the named insured. It is undisputed that the permission of the named insured, Al Piemonte Ford, was required but the dispute revolves around whether there was permission expressed or implied.
The automobile involved and owned by the Ford agency was obtained by a Larry Keegan, a car salesman for the Ford agency.
As to whether permission was given, either expressly or impliedly, from the conduct of the parties, we must consider the factual situation as well as the construction of the insurance contracts. (Jensen v. New Amsterdam Ins. Co., 65 Ill. App.2d 407, 415.) We, therefore, turn to the depositions of the officers and employees of the Ford agency on the question of permission.
*698 James Casolari, also known as Jim Cass, on deposition, stated that he is the General Manager and Vice President of the Ford agency, and that his salesman has authority to loan out a demonstrator car. For example, if you bought a car, he did not have to get permission from anyone. In regard to the particular vehicle involved herein, he said there was a rental to an outside customer, who would be Attorney General Clark, but that the Attorney General was not charged for the car because the bill was charged to the New Car Sales Manager's Department. He further stated that Frank Fee was in charge of handling loaner or rental cars and said there were no restrictions placed on using the car, that he knew of; that they had twenty loaner-type cars covered under their insurance policy; that no salesman could take it upon himself to loan out a rental that is in the Service Department but would have to go to the Service Manager, Frank Fee, and that it was Frank Fee's discretion as to whether a vehicle would be loaned out. Further on deposition, he stated that in this case Fee at first turned down saelsman Keegan's request because there was to be no fee charged, and that Keegan went to Leonard Lachman and got permission to waive the daily rental fee.
On Lachman's deposition, he stated that he was Sales Manager of the Ford agency and that he authorized the express use of the rental vehicle involved herein so that the cost of rental was absorbed by the New Car Department. He stated further that in their daily rental program, in which they rented Mustangs for $4.95 per day, they had no leasing company and no individual leases; that the only qualification they had on rentals was that you had to be twenty-one and a licensed driver; that the loaner agreement herein was signed for the Ford agency by Keegan, but that apparently nobody signed for the Attorney General's office.
On deposition, Fee stated that he was the Service Director of the Ford agency; that the agency had a fleet of approximately twenty cars they would loan or rent to customers and that he was in charge of the renting or loaning; that if a person were renting a car, he would not give any verbal instructions or restrictions on the use of the car. He further stated that Keegan came to him and said he needed a car for the Attorney General's office; that he refused to give Keegan the car (apparently because he wanted the rental waived), and told Keegan he would have to get the permission of Lachman; that shortly thereafter, Lachman called and said it was O.K. to do it, and to bill the New Car Department for it and that he would sign the car out to Keegan. He also stated that Keegan at no time gave him the name or address of the person who would be driving the car and he put no restrictions on the use of the car; that he did not know who would be using the car and that his *699 orders were just not to loan the car out to anyone who was not driving with a valid driver's license.
Keegan, on deposition, said he went to Cass and said he had a friend, a boy who was up in military school, for whom he wanted to get a car so that he could use it because he, Keegan, was going to sell the boy a couple of cars; that Cass told him he would have to see Lachman and that Lachman told him to go see the Service Manager; that Lachman gave him a card on a Mustang and told him to sign for it. Keegan also stated that the purpose of the loan, or use, was to protect a sale and get another, and that this arrangement is very helpful to him as a busy salesman; that with regard to the Crawfords, he had told Cass that he expected to sell some vehicles.
Assuming that Keegan was guilty of fraud by informing his employer that the vehicle was to be used by the Attorney General's office when, in fact, he intended it for use of Crawford, Jr., it must be concluded that this was a fraud by an agent on his principal and does not bear on the question of the permissive use of the vehicle, under the present circumstances.
From the above depositions, it is noted that the only requirements to secure a rental vehicle was to secure the permission of Fee, the Service Manager; that Fee was not concernd about who would be operating the vehicle or where it would be operated. The only concern Fee expressed was, not in allowing Keegan the vehicle, but in having someone pay the daily rental fee. It was also apparent that there were no restrictions placed on the use of the vehicle. It is also quite apparent that the waiver of the rental fee could be either because the car was for the use of the Attorney General's office or in furtherance of aiding a salesman to make a possible sale. Crawford, Jr., permitted his teen-age friend, George A. Hull, to drive the car with Crawford, Jr. as a passenger, when the accident occurred.
 1 On the facts which the judge had before him, we cannot hold that the trial judge erred when he held, in effect, that there was an unrestricted implied permission. We conclude that the Hull boy was a permissive user of the vehicle; that the purpose of the rental was to incur the goodwill of a prospective purchaser; that this prospective customer was in the vehicle at the time of the accident; that the purpose of the trip was to take Mark Crawford home and that there were no restrictions placed upon the use of the automobile. Under these circumstances, Hardware cannot avoid liability on the grounds that no permission was given.
In Visintin v. Country Mutual Insurance Company, 78 Ill. App.2d 75, page 79, the court stated:

*700 "Illinois has consistently followed what ALR (5 ALR 2d 622) terms the `liberal rule' that once permission is granted for the use of the vehicle, even though restrictions on its use are at that time imposed, coverage exists and the use may be for purposes not contemplated by the insured when permission was given. Fireman's Fund Indemnity Co. v. Freeport Ins. Co., 30 Ill. App.2d 69, 173 N.E.2d 543."
The court also cited with approval, Konrad v. Hartford Accident & Indemnity Co., 11 Ill. App.2d 503 at page 514, 134 N.E.2d 855:
"* * * If the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of the permission; a deviation of the permission is immaterial, the only essential thing is that the permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, that it is undesirable to permit litigation as to the details of the permission and use."
The defendant, Hardware, on the question of permission has cited Hays v. Country Mutual Ins. Co. (1963), 28 Ill.2d 601, 192 N.E.2d 855. However, the facts in that case distinguished it from our case because there the giving of permission by a fifteen-year-old boy was in direct violation of his father's specific instructions, as to the family automobile. Here, we are not dealing with a family automobile, but with a commercial transaction where no restrictions were placed upon the car by the Ford agency. Other cases cited by the defendant are also distinguished on these grounds or because permission was revoked.
We next turn to the determination of the effect of an "excess" clause in an automobile liability policy when in conflict with the "escape" clause in another policy. In New Amsterdam Cas. v. Underwriters, 34 Ill.2d 424, the trial court had entered a judgment on the pleadings in favor of the defendant (Lloyds), holding the plaintiff, New Amsterdam Casualty, solely liable for damages when its named-insured Fiske had an accident while driving a rented automobile insured by Lloyds. On appeal, the Appellate Court reversed the judgment and ruled that each insurer was liable for damages and costs in proportion to the amount of insurance provided in its policy. (56 Ill. App.2d 224.) Thereafter, the Illinois Supreme Court granted plaintiff's petition for leave to appeal. It was plaintiff's contention that Lloyds was liable for the full amount of the damages and that plaintiff's policy provided only insurance in excess *701 of the amount covered by the Lloyds policy. The plaintiff further stated that it provided excess insurance coverage only when the driver insured was driving an automobile other than the car named in his policy. Lloyds contended that Fiske was covered by "other valid and collectible insurance," the plaintiff's policy, and therefore, Lloyds provided no coverage by virtue of its "other insurance" clause (known as an "escape" clause) specifically denying coverage should other valid and collectible insurance be available. The court, in New Amsterdam, at page 428 recognized that the cases are in conflict and adopted the majority rule that "in the case of an apparent conflict between an `escape' clause in one policy and an `excess' clause in the other policy, the `excess' clause is to be given effect." The court therein analyzed many cases, reversed the judgment of the Appellate Court, and remanded the case to the Circuit Court of Cook County, with direction to enter a judgment in favor of the plaintiff. In doing so, the court held, p. 430:
"We hold that the plaintiff extended its insurance to protect Fiske while driving the car involved in the accident with the permission of the named insured only for excess insurance over the valid collectible insurance available to him under the omnibus provisions of the Lloyds policy. Lloyds does not escape through use of the clause denying liability if any person other than the named insured is also covered by other valid and collectible insurance, because plaintiff's policy was not `other' insurance, but rather `excess' coverage."
Quite recently, in Automobile Underwriters v. Hardware Mut. Cas. (1970), 120 Ill. App.2d 159, 256 N.E.2d 463, a case very similar to the present case because of the identity of the provisions in the insurance policies involved, the Appellate Court, Third District, held that Hardware, on a policy like the policy it has involved herein, was not under obligation to defend the driver of a non-owned vehicle, and in doing so affirmed the Circuit Court of Peoria County. However, on leave to appeal being allowed, the Illinois Supreme Court reviewed the decision of the Appellate Court and remanded the cause to the Circuit Court with directions to enter declaratory judgment in accordance with the views expressed in its opinion. (Automobile Underwriters, Inc. v. Hardware Mutual Casualty Company et al., 49 Ill.2d 108.) In that case, a man named Grant was test driving an automobile, while considering buying it. The automobile was owned by Hopkins Motor. Grant had an accident with another automobile and both Grant and Hopkins were sued. As in our case, Hopkins, the owner, had an automobile garage liability policy issued by the defendant, Hardware Mutual. Hardware Mutual refused *702 to defend Grant. Grant's insurer, Automobile Underwriters, on a policy of automobile insurance covering another automobile, sued Hopkins' insurer for declaratory judgment.
 2 The Illinois Supreme Court in its opinion, after pointing out the dilemma of similar "excess" and "escape" clauses which have caused a split along three lines of authority, stated at page 111:
"The third view which various courts have adopted is to hold the `escape' clause does not relieve the owner's insurer of a duty to defend where the driver's policy provides only `excess' coverage if there is other valid and collectible insurance on a non-owned automobile. State Farm Mutual Automobile Insurance Co. v. Home Indemnity Insurance Co., 23 Ohio St.2d 45, 261 N.E.2d 128; Bituminous Casualty Corp. v. Andersen, 184 Neb. 670, 171 N.W.2d 175; Federal Insurance Co. v. Prestemon, 278 Minn. 218, 153 N.W.2d 429.
We find the last mentioned line of authority most persuasive in light of our decision in New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London, where the court adopted the view that `when the owner of an automobile "has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability."' (34 Ill.2d at 430.) We find no justification to allow a circumvention of New Amsterdam by the mere inclusion of the phrase `either primary or excess' in the `escape' clause. Thus, Hardware has the primary responsibility to defend Grant. If judgment should be entered against Grant for an amount in excess of Hardware's policy limits then Grant's policy will come into force."
In view of the reversal by the Supreme Court in the case relied upon in this court's first opinion, Automobile Underwriters v. Hardware Mut. Cas., 120 Ill. App.2d 159 (Third District), the first opinion is withdrawn.[1]
The judgment of the Circuit Court is affirmed.
Judgment affirmed.
T. MORAN, P.J., and SEIDENFELD, J., concur.
NOTES
[1] Justice Charles H. Davis participated in the now withdrawn opinion. Prior to the filing of the Petition for rehearing, Justice Davis was elected to the Illinois Supreme Court. Justice Thomas J. Moran participated in the Petition for rehearing and this opinion.