TRANSAMERICA INSURANCE GROUP vs. TURNER
CONSTRUCTION COMPANY & others.[1]

No. 91-P-694.

Suffolk. September 14, 1992. - October 20, 1992.

Present: KASS, SMITH, & PORADA, JJ.

*Indemnity. Contract*, Indemnity, Subcontract. *Insurance*, Liability insurance, Coverage, Contribution among insurers, Unfair act or practice. *Consumer Protection Act*, Insurance, Businessman's claim. *Estoppel. Practice, Civil*, Report.

Language in an insurance policy, covering a construction subcontractor's potential liability to its general contractor under the indemnity provisions of the subcontract, included coverage of claims against the general contractor, in its over-all supervisory role, arising from the subcontractor's negligent conduct toward one of its own employees. [449-451]

"Other insurance" provisions of a general contractor's liability insurance policy relieved that insurer of any obligation to share with the subcontractor's insurer the expenses of settling claims arising under the indemnity provisions of the subcontract. [451]

An insurance company's allegedly unfair settlement practices laid no foundation for a businessman's claim under G. L. c. 93A, the Consumer Protection Act. [451-452]

In the circumstances, an insurance company was not estopped to deny coverage of certain claims with respect to which it had entered into a settlement agreement. [452-453]

On a claim by one insurance company against another, none of the categories of unfair settlement practice under G. L. c. 176D, § 3(9), applied in the context of the parties' statement of agreed facts. [453-454]

CIVIL ACTION commenced in the Superior Court Department on February 5, 1990.

The case was reported by *Hiller B. Zobel*, J.

---

[1]Liberty Mutual Insurance Company. Nominally, Patrick J. Davis, Mary E. Davis, Erin M. Davis, and Christine J. Davis (the latter two by their mother and next friend, Mary E. Davis) are parties to the action, but their interests were resolved by settlement and they have no interest in this appeal.

*Gary D. Buseck* for the plaintiff.

*Philip J. Foley* for the defendants.

KASS, J. Under its subcontract with Turner Construction Company (Turner), the subcontractor, Blaesing Granite Company (Blaesing), agreed to indemnify (to the extent allowed by statute) Turner, the general contractor, for all liability "arising out of or occurring in connection with the execution of the Work." The same article of the subcontract required Blaesing, before starting work, to obtain contractual liability insurance for the liability it had assumed. Blaesing's insurer, Transamerica Insurance Group (Transamerica), supplied the requisite contractual liability insurance but asserts that the language of the policy issued does not cover injuries suffered by an employee of Blaesing, Patrick J. Davis, when a piece of granite fell on him. We conclude that Transamerica's policy covers the injuries sustained by Davis and that Transamerica is responsible for all payments made pursuant to a settlement with Davis which was concurred in by Transamerica.

The aspect of the case with which we have to deal has its origins in a complaint (as amended) for a declaratory judgment brought by Transamerica, in substance, against Turner's liability insurer, Liberty Mutual Insurance Company (Liberty). The controversy is here on a statement of all material facts, to which the parties have agreed, and a request, made under Mass.R.Civ.P. 64, 365 Mass. 831 (1974), that the case be reported to this court for determination.[2]

---

[2]That procedure, i.e., putting the questions to be decided to the Appeals Court by a report, was adopted at the urging of the Superior Court judge before whom the case came for disposition. Under the third sentence of Mass.R.Civ.P. 64, a trial judge may, indeed, report a case to us "where the parties agree in writing as to all the material facts" and request a report. Compare *Heck* v. *Commonwealth*, 397 Mass. 336, 338-339 (1986); *Shabshelowitz* v. *Fall River Gas Co.*, 412 Mass. 259, 260-262 (1992); *Cusic* v. *Commonwealth*, 412 Mass. 291, 293-294 (1992); *Globe Newspaper Co.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, 412 Mass. 770, 772-773 (1992), where a basis for a report was, in each instance, lacking. Reporting a case for determination on agreed facts is, nonetheless, a practice we discourage unless the question is one of exceptional novelty, would be determinative in other pending cases, has some significance be-

Turner was the general contractor for the construction of a large office building at 75 State Street, Boston. Blaesing's work on the job, as described in its subcontract from Turner, included the fabrication and installation of the exterior granite. On April 8, 1988, while a Blaesing crew was aligning a panel on the thirty-first floor, that panel broke and a chunk of granite fell to the twenty-eighth floor where Davis, an employee of Blaesing, was chipping out poured concrete which had overflowed. The hurtling fragment of granite struck and injured Davis. Among safety practices which Turner and Blaesing had adopted was a prohibition against anyone working below granite installation operations. There had, obviously, been a failure of coordination.

It now becomes necessary to rehearse the maneuvers by which the insurance companies became antagonists. Davis, as might have been expected, brought a negligence action against Turner, from which a larger recovery was possible than the worker's compensation benefits from Davis's employer, Blaesing. Turner's insurer, Liberty, tendered the defense of Turner to Transamerica, as Blaesing's insurer, by letter dated December 7, 1988, and, by letter dated May 23, 1989, Transamerica assumed Turner's defense, without reservation of rights. The lawyer earlier designated by Liberty to look to Turner's interests withdrew from further activity in the case.

Eight months later, however, Transamerica underwent a change of heart on the brink of trial. It took the position that the injury to Davis had been caused by the sole negligence of

yond the immediate case, or presents a situation when an expedited resolution at the appellate level is required. In discharging their function, appellate judges benefit from rulings of law made by trial judges, not least because sound rulings may obviate an appeal altogether. When we have the benefit of a decision by a trial judge, that is generally the jumping off place for our own deliberative process. The problem presented in this case is one of interpreting language in an insurance contract; however interesting, it is a relatively commonplace intellectual exercise and lacks the cosmic quality which we have suggested makes a case an appropriate candidate for a report. It would have been better if the trial judge had decided the case. See *Commonwealth* v. *Lotten Books, Inc.*, 12 Mass. App. Ct. 625, 626 n.3 (1981).

Turner and that, therefore, the additional insured endorsement on Blaesing's policy with Transamerica did not apply.[3] Transamerica demanded that Liberty take over Turner's defense, an invitation which Liberty, at that advanced stage of the litigation, declined. Trial of the Davis claim before a jury began on March 15, 1990, with Transamerica handling Turner's defense. Well into the trial, the parties agreed to settle[4] upon terms to which Transamerica and Liberty, which coincidentally was Blaesing's workers' compensation insurance carrier, subscribed. As of the time the case was stated for purposes of report, Transamerica had paid out an aggregate of $629,669.90 to "lock in" an annuity to make the payments referred to in note 4; in making the other payments described in note 4; and in defraying Turner's legal expenses.

1. *Transamerica's liability to Turner.* Transamerica's primary argument is that its additional insured endorsement, which named Turner as an insured on the 75 State Street job, "but only with respect to liability arising out of 'your [Blaesing's] work' for that insured [Turner] by or for you," does not extend to the Davis accident. That is so, Transamerica urges, because the words "arising out of" presuppose that Blaesing was the proximate cause of the accident whereas it was Turner which was the proximate and, indeed, the sole cause of the accident. That conclusion, Transamerica argues,

---

[3]Under G. L. c. 149, § 29C, as appearing in St. 1985, c. 228, § 3, a provision in a subcontract which required a subcontractor to indemnify "any party" for "injury to persons or damage to property not caused by the subcontractor" is void. By way of complying with that statute, the subcontract contained a provision which said, "Article XXIII of this Agreement does not require indemnification against liability or injury to persons or property resulting from the sole negligence of Turner or the owner."

[4]The settlement provided that the workers' compensation insurer (Liberty) would continue to pay all workers' compensation benefits, including medical and rehabilitation expenses, through April 1, 1991, the date on which Turner would pay Davis a lump sum of $200,000, plus $175,000 directly to Davis's lawyer for his legal expenses. Beginning April 1, 1992, Turner was to pay Davis $14,378 per year for the rest of his life. Should Davis die before the expiration of thirty years, the $14,378 annual payment was to be made to designated members of Davis's family who survived him for the balance of the thirty-year period. Transamerica guaranteed payments to be made by Turner.

follows from Turner's general responsibility for safety on the job and Turner's failure to cordon off the area below where Blaesing was installing granite.

The argument is breathtakingly unpersuasive. One would have to ignore that it was Blaesing which lost control of the piece of stone which fell on Blaesing's unfortunate employee, Davis. To be sure, the accident would have been averted had Turner enforced compliance with its own safety procedures; it would also have been averted if Blaesing had discharged *its* responsibility for adhering to safety practices on the job. The causal link between Blaesing's work and Davis's injury is so obvious that we do not belabor it. That the general contractor, because of its over-all supervisory role, would be a target for a claim of negligence as well is precisely the purpose of having the subcontractor's insurance name the general contractor as an additional insured.

Transamerica also attempts to make something of the circumstance that when Davis was hurt, he was performing a task not originally in the Blaesing subcontract and for which the owner, rather than Turner, was to pay Blaesing. Even if that were a basis for concluding (we do not so decide) that the work Davis was doing fell outside the definition of "the work" in the subcontract, that would not assist Transamerica because, as we have said, the fall of the stone which struck Davis was inextricably connected with Blaesing's work under the subcontract.

We may add that the certificate of insurance issued by Transamerica to Turner (on which Turner could claim reliance) contained broader language than the insurance contract. The former document certified that there was in force "blanket contractual [insurance] including liability assumed by insured under the subcontract." Under the subcontract, it will be recalled, Blaesing agreed to indemnify Turner for "all claims arising out of or occurring in connection with the execution of the Work" and to insure that potential contractual liability. The indemnity provision in the subcontract is functionally like those we considered in *Jones* v. *Vappi & Co.*, 28 Mass. App. Ct. 77, 79-81 (1989), and *Kelly* v. *Dimeo, Inc.*,

31 Mass. App. Ct. 626, 629-630 (1991); its purpose is to distribute among the subcontractors on a construction job the insurance burdens covering their respective areas of responsibility — subject, always, to the limitation discussed in note 3 above. Davis's injury strikes us as a model of the sort of liability the indemnity provision in the subcontract anticipated and against which Transamerica was providing insurance.

2. *Allocation of defense and settlement costs.* As a fallback position, Transamerica argues that even if Turner qualifies as an additional insured, Liberty, as the provider of general liability insurance to Turner, is obligated to share equally with Transamerica the settlement costs and legal expenses involved with the Davis claim. Such might be the result in cases of overlapping, essentially identical coverage. See *Reliance Ins. Co.* v. *Aetna Cas. & Sur. Co.*, 393 Mass. 48, 52-53 (1984); *Mission Ins. Co.* v. *United States Fire Ins. Co.*, 401 Mass. 492, 500-501 (1988). Here the "other insurance" provisions were not identical; the Liberty policy issued to Turner carried an endorsement which provided:

> "It is agreed that this policy does not apply to that portion of the loss for which the Insured has other valid and collectible insurance, as an Additional Insured on a Liability Insurance policy issued to a subcontractor of the Named Insured whether such policy is on a primary, excess or contingent basis."

Liberty's policy, thus, was tailored to fit the allocation of risk made by the subcontract. There is a happy — and perhaps uncommon — coincidence of plain language with plain purpose.

3. *Liberty's c. 93A and c. 176D claims.* In addition to answering, Liberty responded to Transamerica's declaratory judgment action with counterclaims under G. L. c. 93A, § 11, and G. L. c. 176D, § 3(9). The factual basis for its claim under either statute is that Transamerica belatedly tried to saddle Liberty with Turner's defense and, after failing in that effort, settled the Davis case and sought to stick Liberty with the bill.

To the extent that Liberty thinks that unfair settlement actions under G. L. c. 176D, § 3(9), lay a foundation for an action under G. L. c. 93A, § 11, it is mistaken. A person whose rights are affected by a violation of G. L. c. 176D, § 3(9), has a right of action under G. L. c. 93A, § 9, but by express language in § 9(1), that right does not inhere in a person entitled to bring an action under G. L. c. 93A, § 11; i.e., a business against business 93A claim does not lie for violation of G. L. c. 176D, § 3(9). See *Jet Line Servs., Inc. v. American Employers Ins. Co.*, 404 Mass. 706, 717 n.11 (1989).

Liberty bases its counterclaim in part on a theory that once Transamerica took over Turner's defense, Transamerica was estopped at a substantially later time to deny coverage. Such a claim would lie under G. L. c. 93A, § 11. *Id.* at 717. An action based on estoppel, however, presupposes a change of position by the plaintiff to that plaintiff's detriment. See *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 729 (1974); *Greenstein* v. *Flatley*, 19 Mass. App. Ct. 351, 357 (1985); Restatement (Second) of Contracts § 90 (1979). As to those ingredients, Liberty comes up empty-handed: it did not alter its conduct and it suffered no detriment. Liberty does not suggest that it would have defended the Davis claim differently or that the settlement was disadvantageous. It could hardly do so as its lawyer did not withdraw his appearance in the Davis case, and Liberty subscribed to the agreement by which the Davis case was settled. Moreover, an insurer may assume a defense and, upon learning more about the case through discovery or otherwise, disclaim coverage. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 15-16 (1989); *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 323 (1983). Cf. Couch, Insurance § 51.92 (Rhodes rev. 2d ed. 1982 & Supp. 1992).

As Transamerica advanced all the settlement funds and defense costs, Liberty cannot say that it suffered loss of money as G. L. c. 93, § 11, requires. Defending against Transamerica's declaratory judgment action will have cost Liberty legal expense. To the extent Transamerica has

presented a worthy question of law about how the insurance contracts should be interpreted, it has surely not acted unfairly or deceptively. If Liberty thinks the declaratory action is frivolous, the statutory remedy would be a claim under G. L. c. 231, § 6F. No such claim has been made. Had Transamerica not put its money up front, one might have ascribed to it an extortionate purpose of using litigation to pry contributions from Liberty. See *Atkinson* v. *Rosenthal*, *ante* 219, 226 & n.5 (1992). By paying all the settlement and defense costs, Transamerica insulated itself against a claim under G. L. c. 93A, § 11.

None of the four categories of unfair settlement practice under G. L. c. 176D, § 3(9), which Liberty asserts against Transamerica, applies in the context of the agreed facts.

There was no failure to affirm or deny coverage within a reasonable time. Transamerica timely undertook the defense and saw it through to settlement. Apart from the question whether Transamerica, during the course of preparation, had discovered ground for its attempt to tender the case to Liberty, the effort so to do cost Liberty nothing. See subparagraph (*e*) of G. L. c. 176D, § 3(9).

There was no failure to effect prompt, fair, and equitable settlements of claims. The claims were settled in a fashion satisfactory to Davis and to Liberty. See subparagraph (*f*) of G. L. c. 176D, § 3(9).

The insured, Turner, was not compelled to institute litigation to recover amounts due under an insurance policy. The interests of the insured were protected by Transamerica and a settlement was made in the insured's behalf. See subparagraph (*g*) of G. L. c. 176D, § 3(9).

Finally, there was no failure to provide a prompt and reasonable explanation for denial of a claim or for an offer of compromise settlement. This portion of the statute, subparagraph (*n*) of G. L. c. 176D, § 3(9), is addressed to policy holders or claimants under insuance policies. It is not reasonably to be read as applying to controversies between insurance companies about possibly overlapping coverage. In any event, however wrong Transamerica's intepretation of its in-

surance contract with Blaesing may have been, there was nothing uncertain about the portion of the policy or the reasoning on which Transamerica based its unsuccessful position.

In response to the report, we decide that Transamerica is liable under its insurance contract to pay the sums due from Turner under the settlement agreement between Davis and Turner in Suffolk Superior Court Civil Action 88-6254-D, without contribution from Liberty to that settlement (except as workers' compensation insurer) or to the cost of defense. Liberty shall not recover on its counterclaims under G. L. c. 93A and c. 176D.