641 N.E.2d 855 (1994)
266 Ill.App.3d 1049
204 Ill.Dec. 425
HOME INSURANCE COMPANY, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a corporation, and Turner Construction Company, a corporation, Defendants-Appellees.
No. 1-92-0563.
Appellate Court of Illinois, First District, Sixth Division.
August 5, 1994.
As Modified on Denial of Rehearing October 28, 1994.
*856 Nicholas A. Riewer and Ciara R. Ryan of Bollinger, Ruberry & Garvey, Chicago, for appellant.
Thomas J. Keevers and Joseph P. Postel of Keevers & Little, Chicago, for appellees.
Presiding Justice EGAN delivered the opinion of the court:
This is a dispute between two insurance carriers, the plaintiff Home Insurance Company (Home) and the defendant Liberty Mutual Insurance Company (Liberty). The dispute centers on the duty of the two carriers to defend a tort claim against their insured.
Liberty issued a liability policy to Turner Construction Company (Turner), the general contractor on a construction site located at 10 South LaSalle Street in Chicago. Turner was also an additional insured in a policy issued by Home to David Architectural Metals, a subcontractor of Turner. Charles Aderholt, an employee of another subcontractor, filed a suit against Turner for negligence and a violation of the Illinois Structural Work Act. (Ill.Rev.Stat.1991, ch. 48, par. 59.) Home provided Turner with a defense in the Aderholt action pursuant to a reservation of rights and requested Liberty to contribute to the defense of Turner. Liberty refused. Home filed a complaint against Liberty seeking a declaration that Liberty's policy obligated it to contribute to the defense of Turner in the Aderholt action.
*857 Both Liberty and Home moved for judgment on the pleadings. The trial judge held that Home was the primary carrier "at least as it related to this claim, and Liberty is an excess [carrier]." He concluded therefore that Liberty was not required to contribute to the defense. In this appeal, Home admits that it has a duty to defend Turner, but it maintains that Liberty must pay a pro rata share of the defense cost.
Our discussion necessarily begins with the parties' policies. The endorsement to the Home policy adding Turner provided as follows:
"It is agreed that:
1. The `persons insured' provision is amended to include as an insured the person or organization named above, [Turner], but only with respect to liability arising out of (1) operations performed for [Turner] by the named insured at the location designated above or (2) acts or omissions of [Turner] in connection with his general supervision of such operations * * *.
* * * * * *
3. Additional exclusions. This insurance shall not apply:
* * * * * *
(b) To bodily injury or property damage arising out of any act or omission of [Turner] or any of his employees, other than general supervision of work performed for [Turner] by the named insured; * * *"
The Home policy also contains an "other insurance" clause which provides as follows:
"Other insurance. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.
When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below." (Emphasis in original.)
Liberty's policy is a general liability policy in which coverage is limited by several endorsements, only one of which, Endorsement 21, is pertinent here. That endorsement provides as follows:
"It is agreed that this policy does not apply to that portion of the loss for which [Turner] has other valid and collectible insurance, as an additional insured on a Liability Insurance policy issued to a subcontractor of [Turner] whether such policy is on a primary, excess or contingent basis."
The principal argument of the parties centers on their interpretation of Endorsement 21, that is, whether Endorsement 21 is an "escape" clause or "excess" clause. An excess clause "allows coverage only `over and above' other insurance"; an escape clause "holds the policy null and void with respect to any hazard as to which other insurance exists." (Putnam v. New Amsterdam Casualty Co. (1970), 48 Ill.2d 71, 76, 269 N.E.2d 97.) Home insists that Endorsement 21 is an escape clause, and Liberty insists that it is an excess clause. Liberty concedes that if Endorsement 21 is an escape clause, it would be obliged to contribute its pro rata share of defense costs. (See Western States Mutual Insurance Co. v. Continental Casualty Co. (1971), 133 Ill.App.2d 694, 272 N.E.2d 439.) We have determined that Endorsement 21 is not an excess clause and that Liberty is required to provide a pro rata share of the defense because we have also determined that Liberty and Home are both primary carriers under the tort complaint of Aderholt.
There are two aspects of this case that should be discussed before we address the merits. Home first contends that the trial judge considered extraneous facts and thus went beyond the pleadings; Home also contends that a fact question exists whether Endorsement 21 was in effect at the time of the accident. We reject out of hand Home's first contention. The judge's remarks, of which Home now complains (it did not complain *858 in the trial court), were directed to specific arguments made by the parties and simply reflected the judge's reasons why he rejected Home's claim that Endorsement 21 was an escape clause and that escape clauses were against the public policy of Illinois.
We also reject Home's second contention on the ground that it has not properly presented the issue. Home filed a complaint and attached its own policy and Liberty's policy which included Endorsement 21. Liberty filed a motion for judgment on the pleadings and emphasized that Home's complaint pointedly ignored Endorsement 21. Home responded that the Liberty policy contained an "undated Endorsement no. 21." (Emphasis in original.) Liberty countered with its own motion for judgment on the pleadings and pointed out that Home had pleaded the policy, including Endorsement 21.
Home filed a reply brief, but the judge had not seen the reply brief before the hearing began. After he was given the reply brief, he adjourned to read it. In a footnote in the reply brief Home said that by pleading Endorsement 21 it had "made no implicit admissions with regard to when that endorsement was effective." Home then added that it "regrets mentioning this factual issue as an aside." (Emphasis added.) During oral argument in the trial court, Home never mentioned any factual issue as to the effective date of Endorsement 21.
In our judgment, Home is barred from raising any factual issue as to Endorsement 21 in this court. We do not approve of the coy way the issue was presented to the trial judge, "as an aside." It is manifestly unfair to trial judges to permit parties to play issues peek-a-boo with the judges. A party should be required to raise an issue forthrightly and directly. If Home wanted the question decided conclusively, it could have called for discovery on the question of when Endorsement 21 became effective. If it determined that the endorsement was not effective on the date of accident, the trial judge (and this court) could have avoided a considerable amount of work. We will not permit Home now to raise a fact question, and we will decide the case on the merits.
We are indebted to Liberty for the citation of Marwell Construction, Inc. v. Underwriters at Lloyd's, London (Alaska 1970), 465 P.2d 298, in which the Alaska Supreme Court quoted from an opinion of the Fifth Circuit Court of Appeals:
"`On facts, strikingly simple, neither complex nor conflicting, we have again the problem of an Insurer who has written the policy and taken Assured's premium urging him to go elsewhere, tentatively, if not finally, because another insurer is, or ought to, or may be, liable for the whole, half, or part a loaf. In the process the moving Insurer generally garbs itself in the appealing robes of some assured so that, casting itself in a strange role, it asserts what it so often denied that the policy should be liberally construed and, by a bare toe hold manages to make itself enough of a party to force a construction of another contract made by another insurer with another assured and which, under no circumstance, was made for its benefit.
So it is here. Coming as it does the accident and the assureds seem all but forgotten as the two Insurers match clause against clause, coverage against exclusion, claim against denial, in this battle between fortuitous adversaries.' (American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., 248 F.2d 509 (5th Cir. 1957), at 510-11.)" Marwell, 465 P.2d at 300.
Those words were written in 1957; and one need read only a small percentage of the large number of cases since that time to recognize that the struggles between insurance carriers continue and involve seemingly myriad manners of expressing the "other insurance" clauses of insurance policies.
Both parties agree that their duty to defend depends on the allegations of the Aderholt complaint. That complaint alleged in count I that Turner violated the Structural Work Act for failure to provide a proper scaffold. It also alleged in count II, a negligence count, that Turner failed to supervise the work done. Home agrees that its coverage is primary and that it is required to defend the entire complaint even though its *859 policy covers only that part of the complaint alleging that Turner failed to supervise. (Maryland Casualty Co. v. Peppers (1976), 64 Ill.2d 187, 355 N.E.2d 24.) Liberty does not dispute that its policy covers acts alleged in the complaint and that it may ultimately be called upon to indemnify Turner. But Liberty contends that it is not obliged to defend because of the language of Endorsement 21.
Endorsement 21 provides that the policy "does not apply to that portion of the loss for which [Turner] has other valid and collectible insurance" with subcontractors, including David. The immediate question is: For what "portion of the loss" does Turner have "collectible" insurance with Home? Liberty argues that the term, "loss," describes a sum of money. What sum of money, then, would Home be required to pay if a verdict were to be returned against Turner?
It is true that Home has the duty to defend the entire complaint but not because of the express language of Home's policy; that duty has been placed on Home by judicial rule. (See Maryland Casualty Co., 64 Ill.2d at 194, 355 N.E.2d 24.) If a verdict were returned against Turner under the negligence count, Home would be required to indemnify Turner. But if a verdict were returned against Turner under the Structural Work Act count, Home would not be required to indemnify Turner. Consequently, the only "collectible" insurance Turner has with Home is for a "loss" caused by Turner's negligence in failing to supervise. We judge that when a policy speaks of "collectible" insurance, it means insurance which will indemnify the insured. To use the very definition of an excess clause in a case cited by Liberty, "excess insurance `kicks in' to provide additional coverage once the policy limits of other available insurance are exhausted." (Institute for Shipboard Education v. Cigna Worldwide Insurance Co. (2nd Cir.1994), 22 F.3d 414, 419.) But the Liberty policy will never "kick in" to provide a sum of money over and above what Home will have to pay. Consequently, it cannot be said to be "excess." We conclude, therefore, that Endorsement 21 does not exclude coverage by Liberty of certain portions of the complaint.
Liberty has devoted virtually its entire argument to the fact that the allegations of the Aderholt complaint triggered Home's duty to defend; but it has not answered the claim of Home that the allegations of the Aderholt complaint also triggered Liberty's duty to defend. Liberty concedes that it may properly be called upon to indemnify. It is clear to us, therefore, that Endorsement 21 excludes coverage only for loss caused by acts which are included in the Home endorsement and those are acts involving Turner's supervisory duties. Endorsement 21 does not exclude coverage for the other acts alleged in the complaint. Liberty insists that Endorsement 21 is not an exclusion because it is not contained in that section of the policy which is captioned, "Exclusions." Liberty does not cite any case in support of that argument; but we note that in Doe v. Illinois State Medical Inter-Insurance Exchange (1992), 234 Ill.App.3d 129, 174 Ill.Dec. 899, 599 N.E.2d 983, it was the insurer who argued that a clause which was contained in the section of a policy limiting liability, but not in the section containing exclusions, was nonetheless an exclusionary clause. The appellate court accepted that argument but held that the exclusionary clause was ambiguous and was to be construed against the insurer. We judge, therefore, that both Home and Liberty are primary carriers and both are obliged to defend the complaint pro rata.
Liberty has cited several cases, some of which we will address. Liberty says that the "very endorsement in issue here" was involved in Transamerica Insurance Group v. Turner Construction Co. (1992), 33 Mass. App.Ct. 446, 601 N.E.2d 473, and that the court held that the endorsement rendered Liberty's coverage excess. The case does involve Turner and Liberty, and the Liberty endorsement is the same as the Liberty endorsement in this case; but there is one glaring distinction between that case and the case before us. The subcontractor in that case agreed to indemnify Turner "for all claims arising out of or occurring in connection with the execution of the Work." (Emphasis *860 added.) Transamerica, 601 N.E.2d at 476.
At this point it is appropriate to address another argument of Liberty. Liberty maintains that an interpretation of Endorsement 21 in favor of Home will ignore the intent of Liberty and Turner when Endorsement 21 was executed. But Liberty has nothing to say about the intent of Home and Turner and David, the subcontractor, when Turner was added as an additional insured. If it was the intent of Turner to require its subcontractors to provide the same coverage that existed in Transamerica, it could have done so. And what of David's intent to pay a smaller premium for more restricted coverage for Turner and Home's intent when it restricted its coverage to certain acts of Turner?
In another case cited by Liberty, Maryland Casualty Co. v. Horace Mann Insurance Co. (W.D.Pa.1982), 551 F.Supp. 907, aff'd. (3d Cir.1983), 720 F.2d 664, a student was injured while using a lathe in a classroom. His parents sued the manufacturer of the lathe; the manufacturer impleaded the school district and a teacher as third-party defendants. There were three insurance policies involved, and the parties agreed that the teacher was an insured under all three policies. It was the coverage of the teacher that was in issue. It is obvious to us and significant that all three policies covered all the allegations against the teacher. That is not the case here.
Liberty also relies on Western Casualty & Surety Co. v. Western World Insurance Co. (7th Cir.1985), 769 F.2d 381. But the other insurance provision in issue in that case expressly provided that it "shall apply in excess of such other insurance." (Western Casualty, 769 F.2d at 383.) The court noted:
"Each policy contained a clause requiring the insurer to defend the City. As the district court observed, the obligation to defend is broader than the obligation to indemnify. An insurer is required to defend whenever the loss is even arguably within the policy. [Citation.] But when one policy is primary and the other is excess, only the primary insurer need defend claims below the limits of the primary policy." (Emphasis added.) Western Casualty, 769 F.2d at 385.
The court determined that one insurer was an excess carrier under the terms of the policy itself. We have determined that Liberty was not an excess carrier.
In addition to noting the factual distinction between that case and the case before us, we confess to some puzzlement about this observation of the Court of Appeals:
"As we have construed Western World's policy, Western Casualty's coverage of the `loss' made Western World's obligation that of an excess carrier. It was therefore not required to defend. Had the case gone to judgment against the City, and had that judgment revealed that Western Casualty's policy did not cover the `loss,' then the principle of Royal Globe [Royal Globe Insurance Co. v. Aetna Insurance Co. (1980), 82 Ill.App.3d 1003 [38 Ill.Dec. 449], 403 N.E.2d 680] might have allowed Western Casualty to recover its costs of defense from Western World." (Emphasis added.) (Western Casualty, 769 F.2d at 386.)
We do not know under what theory or what precedent the court made that observation. We feel confident that Liberty would not agree with it. In any event, we find that the case is factually distinguishable.
For these reasons we hold that both Home and Liberty are primary carriers and both are obliged to defend the complaint pro rata.
The judgment of the circuit court is reversed.
Judgment reversed.
RAKOWSKI and GIANNIS, JJ., concur.