# Illinois Official Reports

## Appellate Court

---

***Bartkowiak v. Underwriters at Lloyd's, London*, 2015 IL App (1st) 133549**

---

| | |
|---|---|
| Appellate Court Caption | NANCY BARTKOWIAK, Individually and as Independent Administrator of the Estate of Joseph Bartkowiak, Plaintiff-Appellant, v. UNDERWRITERS AT LLOYD'S, LONDON, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3549 |
| Filed<br>Rehearing denied | August 13, 2015<br>September 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-39995; the Hon. Mary Anne Mason, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert J. Pavich, Ian H. Levin, and John J. Pavich, all of Pavich Law Group PC, of Chicago, and Dwight B. Palmer, Jr., of Palmer & Associates, of Skokie, for appellant.<br><br>Melissa A. Murphy-Petros and William S. Cook, both of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for appellee. |

Panel                    JUSTICE ELLIS delivered the judgment of the court, with opinion.
                         Justices Howse and Cobbs concurred in the judgment and opinion.


**OPINION**

¶ 1        In this appeal, we must interpret a "Contingent Automobile Liability" insurance policy, in which the insurer provides some measure of secondary liability coverage in the event the insured's primary liability insurance fails to cover the insured's loss. Exactly what kind of secondary coverage it provides is the question before this court.

¶ 2        The contingent liability policy says that its coverage does not apply if the insured has "valid and collectible Automobile Liability insurance of any nature." Defendant, the contingent insurer, says that means that if the insured has any primary insurance coverage at all, the contingent policy is not triggered. Plaintiff, on the other hand, says that the contingent liability insurance kicks in if the insured has primary insurance, but that primary insurance is inadequate to fully cover the loss to the insured–plaintiff reads it, in other words, as "excess" coverage if the primary insurance is insufficient. The trial court agreed with defendant. So do we. We thus affirm the trial court's dismissal of the declaratory judgment action.


¶ 3                                I. BACKGROUND

¶ 4        As often happens in insurance coverage cases, this matter began with an underlying tragedy. On October 31, 2009, a truck delivering road resurfacing materials struck and killed a road construction flagger, Joseph Bartkowiak. The decedent's wife, plaintiff Nancy Bartkowiak, sued the truck driver, Stan Wdowikowski; the trucking company that employed him, Denise Wdowikowski Trucking, Inc. (DWT); and the truck broker that assigned the job to DWT, Jack Gray Services, Inc. (Jack Gray). It is worth noting that plaintiff's wrongful death suit did not mention any insurance policies any of the defendants may have had.

¶ 5        The truck driver, Wdowikowski, had a $1 million automobile liability policy through Northland Insurance (Northland). Jack Gray, the truck broker, was an additional insured on the Northland policy for this delivery.

¶ 6        In addition to being covered as an additional insured under the Northland policy, Jack Gray had an insurance policy with defendant Underwriters at Lloyd's, London. Defendant had issued Jack Gray a policy entitled "Contingent Automobile Liability" insurance for the period of July 1, 2009 to July 1, 2010, with a limit of $1 million per occurrence. Defendant agreed to pay "damages resulting from automobile liability that may arise on a contingent basis." Specifically, defendant agreed to pay on Jack Gray's behalf "all sums which [Jack Gray] shall become legally obligated to pay as damages" because of an individual's bodily injury and death "caused by an occurrence and arising out of the transportation of merchandise" as part of Jack Gray's truck brokerage. Defendant also agreed to pay the costs and expenses to defend any lawsuit alleging such bodily injury, including "such investigation, negotiation and settlement of any claim or suit as [defendant] deems expedient."

¶ 7        Under defendant's policy with Jack Gray, Jack Gray was required to obtain primary automobile liability insurance for any job it assigned. On the job that led to the death of

plaintiff's decedent, Jack Gray satisfied that requirement by being an additional insured on the Northland policy; Northland was the primary insurer.

¶ 8 Condition IV of defendant's policy with Jack Gray stated:

"APPLICATION OF CONTINGENT LIABILITY. It is expressly understood and agreed that the coverage provided under this Certificate of Insurance shall not apply if there is valid and collectible Automobile Liability insurance of any nature."

¶ 9 Jack Gray tendered its defense of plaintiff's wrongful death lawsuit to defendant, seeking coverage under the policy. In a letter dated December 7, 2010, defendant denied that the policy covered the lawsuit, citing Condition IV and the fact that Jack Gray had "valid and collectible" liability insurance through Northland. Whether the Northland insurance would be sufficient to wholly cover Jack Gray's liability did not matter, defendant claimed, because defendant had not promised to cover liability over and above the primary insurance–it only applied if Jack Gray effectively had *no* primary coverage due to some invalidity or complete failure of the primary insurance policy. Defendant acknowledged that other parts of its policy with Jack Gray did provide excess coverage in certain circumstances but claimed that this was not one of those instances.

¶ 10 On February 28, 2012, the court presiding over plaintiff's wrongful death suit entered an order approving the parties' settlement agreement. Pursuant to the settlement, plaintiff received $7.8 million, including the full $1 million from Northland. Jack Gray remained exposed in the amount of $4.2 million, so it agreed to assign to plaintiff its rights under Jack Gray's insurance policy with defendant.

¶ 11 Plaintiff, now standing in Jack Gray's shoes, filed this action, seeking a declaration that defendant owed a duty to defend and indemnify Jack Gray for its liability stemming from the truck accident. Plaintiff sought a declaratory judgment that defendant had breached its duties to defend and indemnify Jack Gray in the personal injury suit, that defendant was required to cover the excess $4.2 million referenced in the settlement, and that defendant acted in bad faith in denying coverage. In addition to recounting the above facts regarding the accident and the personal injury suit, plaintiff alleged that defendant denied coverage even though it "knew that Northland's $1 million policy limits had been offered a number of times and [were] refused as woefully inadequate to settle the personal injury suit." Plaintiff also alleged that, even if defendant could rely on Northland's policy in assessing its duty, Condition IV did not apply to exclude the personal injury suit from coverage because Northland's policy could not constitute "valid and collectible" insurance to the extent that it failed to wholly cover the loss.

¶ 12 Defendant moved to dismiss, raising essentially the same arguments it did to Jack Gray in initially refusing to defend or indemnify. Relying on Condition IV cited above, defendant argued that, because Jack Gray did, in fact, have "valid and collectible" automobile liability insurance, defendant owed no duty to plaintiff. Defendant emphasized that its policy was a *contingent* automobile liability policy, and the specific contingency it covered–the complete failure of the primary coverage–never occurred.

¶ 13 On June 5, 2013, the trial court granted defendant's motion to dismiss. The court found that Northland's insurance was "collectible" because plaintiff had collected $1 million from it. The court also stated, "[T]o accept the proposition that Northland's policy was not collectible because the policy limits have been exhausted leaving a portion of the underlying settlement unsatisfied would require the court to transform the Contingent Automobile Liability coverage into excess coverage–something this court cannot do." Plaintiff appeals.

- 3 -

## II. ANALYSIS

A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. In reviewing a trial court's decision to grant a section 2-615 motion, we ask whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, state a cause of action. *Id.* We take as true all well-pleaded facts in the complaint, as well as any reasonable inferences arising from those facts. *Id.* We apply *de novo* review. *Id.*

Plaintiff raises three issues regarding the trial court's decision to grant defendant's section 2-615 motion to dismiss. First, plaintiff contends that the trial court erred in looking outside the underlying personal injury complaint and the policy to determine that defendant was not obligated to provide coverage. Second, plaintiff argues that the policy covers this loss or at least is ambiguous and, as such, must be construed in favor of coverage. Third, plaintiff argues that defendant was estopped from raising Condition IV as a reason to deny coverage because it failed to either defend Jack Gray under a reservation of rights or seek a declaratory judgment that the policy did not cover Jack Gray's loss. We address each of plaintiff's arguments in turn.

### A. The "Eight Corners" Rule

Before reaching the question of defendant's duties under the policy, we address plaintiff's argument that the trial court employed an improper procedure in dismissing her complaint. Plaintiff claims that the circuit court erred in looking beyond the pleadings in the wrongful death suit and the policy to determine that defendant properly denied coverage. The basis for the trial court's ruling was the existence of the Northland policy, but that policy was not mentioned in the underlying lawsuit's pleadings nor was it specifically mentioned in defendant's policy with Jack Gray. Plaintiff says the trial court's review should have been confined to those two documents in determining the duty to defend.

In a declaratory judgment action regarding an insurer's duty to defend, "a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). If the facts alleged in the underlying complaint fall within, or potentially fall within, the policy's coverage, the insurer's duty to defend is triggered. *Id.* This general rule has been referred to as the " 'eight corners rule.' " *Geisler v. Everest National Insurance Co.*, 2012 IL App (1st) 103834, ¶ 70.

But in evaluating an insurer's duty to defend, the trial court may look beyond the underlying complaint as long as the trial court does not determine an issue critical to the outcome of the underlying lawsuit. *Wilson*, 237 Ill. 2d at 459-60. The ultimate outcome of the underlying lawsuit is relevant to an insurer's duty to *indemnify* its insured, not to its duty to defend. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993) ("The duty to indemnify arises only if the facts alleged *actually* fall within coverage." (Emphasis in original.)). Allowing the trial court to inquire into the merits of the underlying case, in determining the duty to defend, risks merging the two duties, when in fact the duty to defend is much broader. *Id*.

But provided that the trial court is not, in effect, adjudicating a critical issue in the underlying case, there is no reason why the trial court could not consider relevant, objective,

undisputed facts in deciding the duty to defend, even if those facts fall outside the pleadings of the underlying lawsuit. In fact, " '[t]he *only time* such evidence should not be permitted is when it tends to determine an issue crucial to the underlying lawsuit.' " (Emphasis added.) *Wilson*, 237 Ill. 2d at 461 (quoting *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983)).

¶ 22    Here, there was no dispute that the truck driver's policy with Northland served as the primary insurance, and that Northland provided a defense to Jack Gray in the underlying suit. Plaintiff admitted as much in her declaratory judgment complaint. We see no reason why the trial court should have been required to ignore these objective, undisputed facts in evaluating defendant's duties under the policy. There was no risk that doing so would require the trial court to determine an issue critical to the underlying case; the fact that Northland provided insurance and a defense to Jack Gray had no effect on the issues of the underlying case, which concerned the defendants' negligence for the death of plaintiff's husband. To demand that the court simply ignore basic, uncontroverted facts such as these would impose the kind of "judicial blinders" that the Illinois Supreme Court has decried. (Internal quotation marks omitted.) *Id.* at 460-61.

¶ 23    Plaintiff recognizes that a trial court may look beyond the pleadings, under certain circumstances, when assessing coverage but contends that the trial court could not do so in this case, because defendant did not file a declaratory judgment action or defend Jack Gray under a reservation of rights. Plaintiff cites *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999), in support of its contention. But the issue in *Ehlco* was whether the insurer was estopped from raising policy defenses, not whether the trial court committed error in considering facts beyond the underlying complaint when evaluating coverage. *Id.* at 150-55. *Ehlco* does not support plaintiff's contention.

¶ 24    Plaintiff also cites *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, but that case is distinguishable as well. That case involved a slew of toxic-tort cases where the plaintiffs claimed they were exposed to hazardous chemicals while performing work as welders. *Id.* ¶ 4. The plaintiffs sued Illinois Tool Works (ITW) and other manufacturers of welding tools over that exposure. *Id.* The parties all agreed that ITW did not begin manufacturing welding materials until 1993, but some of the lawsuits blamed ITW for exposure that occurred prior to 1993. *Id.* ¶ 12. The insurance company refused to defend ITW on those lawsuits alleging pre-1993 exposure because they were groundless. *Id.* ¶ 10. The court, noting that the underlying complaints were clearly within the language of the policy, said that the insurer could not rely upon its extrinsic information–the fact that ITW did not manufacture welding products until 1993–to deny coverage. *Id.* ¶¶ 14-21. The court emphasized, in particular, that the language of the policy with ITW stated that the insurer would defend ITW on personal-injury actions "even if the allegations of the suit [were] false or groundless." *Id.* ¶ 5. Just as importantly, the extrinsic fact on which the insurance company relied spoke directly to the merits of the underlying lawsuit, which, as we have explained above, is precisely the type of determination a court is not permitted to make in considering the duty to defend. See *Wilson*, 237 Ill. 2d at 460-61 (court should not consider extrinsic evidence when doing so requires determination of issue central to underlying case).

¶ 25    This case is different. Here, in determining that defendant owed no duty to defend, the trial court relied on certain facts–the existence of the Northland policy, and the fact that Northland provided a defense and at least partial indemnification to Jack Gray–that were not only

objective and undisputed, but which also did not require the trial court to delve into the merits of the underlying suit and determine a critical issue in that lawsuit. The trial court committed no error here.

¶ 26                                B. The Term "Collectible"

¶ 27     We now turn to plaintiff's contention that defendant breached its duty to defend Jack Gray in the lawsuit arising from Wdowikowski's accident. When determining whether a lawsuit triggered an insurer's duty to defend, the question is whether the allegations of the lawsuit fall within, or potentially within, the policy's coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). If they do, then the insurer has a duty to defend its insured. *Id.* An insurer's duty to defend is "much broader" than its duty to indemnify. *Id.* Thus, where an insurer has no duty to defend, it necessarily has no duty to indemnify. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 398.

¶ 28     When construing the language of an insurance policy, we apply the same principles as when we construe the language of a contract. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Our primary goals are to determine the parties' intent in agreeing to the terms of the policy and to give effect to that intent, as expressed through the language of the policy. *Id.* In determining the parties' intent, we construe the policy as a whole and take into account the type of insurance provided and the purposes of the entire contract. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391; *Outboard Marine Corp*., 154 Ill. 2d at 108.

¶ 29     If the language of the policy is unambiguous, the policy is applied as written unless it contravenes public policy. *Hobbs*, 214 Ill. 2d at 17. Where a policy is ambiguous, an insurer's liability will be liberally construed in favor of coverage. *Id.* A policy is ambiguous where it is susceptible to more than one *reasonable* interpretation; we will not strain to find ambiguity where the policy contains none. *Id.*

¶ 30     The parties' dispute centers on Condition IV of the policy: "[T]he coverage provided under this Certificate of Insurance shall not apply if there is valid and *collectible* Automobile Liability insurance of any nature." (Emphasis added.) Defendant cites this provision as its reason for denying coverage of the wrongful death suit, noting that Northland, the truck driver's automobile liability insurer, covered the loss. In defendant's view, Condition IV applies if the insured procures any automobile insurance policy, of any amount and kind, as long as that insurance policy is valid and the insured is capable of collecting on it–even if that policy does not wholly cover the insured's loss.

¶ 31     Plaintiff, on the other hand, reads "collectible" as implying a monetary limit. In plaintiff's view, if the insured has a valid policy but it does not wholly cover the insured's loss, that policy is "collectible" only to the extent it covers that loss and is otherwise "uncollectible." Thus, to the extent that the underlying automobile insurance failed to fully cover the insured's loss in this matter, that insurance was "uncollectible," and defendant remained obligated to cover the remaining portion of the loss. Plaintiff's back-up argument is that, even if defendant's interpretation is reasonable, so is plaintiff's, and any ambiguity should be resolved in favor of coverage for the insured. See *id.*

¶ 32     As we have noted, a more fundamental way to look at plaintiff's position is that plaintiff views Condition IV as "excess" coverage–coverage for any loss that exceeds the limit of the underlying insurance's coverage. See 1 Steven Plitt *et al.*, Couch on Insurance 3d § 219:5, at 219-12 (1995) (noting that excess insurance "provides that an insurer will pay a loss only after

other available primary insurance is exhausted"). Defendant views Condition IV (and indeed, the heading of Condition IV suggests as much) as providing only "contingent" coverage–coverage only if a certain event does or does not happen, here if the insured has other "valid and collectible" automobile liability insurance. That provision is sometimes referred to as an "escape clause." See *Home Insurance Co. v. Liberty Mutual Insurance Co.*, 266 Ill. App. 3d 1049, 1052 (1994).

¶ 33    The policy does not define the term "collectible." Therefore, we must give that term its "plain, ordinary and popular" meaning as it appears in the dictionary. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010); *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366 (2006). Webster's Third New International Dictionary 444 (1993), defines "collectible" as, "1 : suitable for a collection : fit for being collected *** 2 : due for present payment : capable of being collected : exchangeable for cash." On the other hand, Black's Law Dictionary 257 (7th ed. 1999) defines "collectability" as, "The relative ability of a judgment creditor to make a judgment debtor pay the amount of the judgment; the degree to which a judgment can be satisfied through collection efforts against the defendant."

¶ 34    So the dictionaries are not much help; they offer support for both parties' positions. In accord with defendant's view, the Northland policy was certainly "suitable" or "fit for being collected," as plaintiff actually collected from that policy. However, in accord with plaintiff's view, the judgment against the insured could not be satisfied through Northland's policy, and plaintiff thus lacked the ability to receive "the amount of the judgment" from Northland alone.

¶ 35    So in isolation, the word "collectible" is not clear. But that does not necessarily render it ambiguous. Among our commands in interpreting insurance policies is not only to examine the words in controversy but to examine them in light of the policy as a whole. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391; *Outboard Marine Corp.*, 154 Ill. 2d at 108. Reviewing the policy as a whole, we find that another provision in this insurance policy sheds significant light on the matter.

¶ 36    That provision is Condition VIII of the policy, which governs the policy's coverage in the event that the insured obtains other *contingent* automobile liability insurance (the same kind it obtained from defendant). The relevant first sentence of Condition VIII reads as follows:

"OTHER INSURANCE. The coverage provided herein is excess over and above any other valid Contingent Automobile Liability Insurance that provides coverage for any loss that otherwise would be covered by the terms and conditions of this Certificate."

¶ 37    Again, by comparison, Condition IV, which governs the policy's coverage when the insured obtains standard automobile liability insurance, reads in full:

"APPLICATION OF CONTINGENT LIABILITY. It is expressly understood and agreed that the coverage provided under this Certificate of Insurance shall not apply if there is valid and collectible Automobile Liability Insurance of any nature."

¶ 38    A comparison of these two provisions supports defendant's position that Condition IV is not an excess coverage provision but rather an escape hatch. The parties knew how to express their desire to contract for excess liability coverage, because they clearly did so in Condition VIII. The language "excess over and above any other" insurance in Condition VIII is so clear as to be, if anything, redundant. The absence of such language in Condition IV is conspicuous. Indeed, Condition IV not only fails to contain any language suggesting that it serves as

"excess" coverage but also contains language indicating that it does not–it states that coverage under the policy "shall not apply" in the event there is other valid, collectible insurance. Saying that coverage "shall not apply" if there is certain other insurance is markedly different than saying that coverage will apply only in excess of the primary coverage, or to the extent that the primary coverage is insufficient, or any other way one might convey the concept of excess coverage. And it is glaringly different when we see that, in Condition VIII, the policy had no trouble expressing the concept of excess coverage quite clearly. If the intent of the policy was to provide excess coverage above and beyond any *standard* automobile liability insurance that the insured procured, we can think of no reason why the policy would not have expressed that intent in Condition IV in precisely the same way it expressed that concept in Condition VIII, concerning other *contingent* liability insurance.

¶ 39 We find further support for defendant's position in *Home Insurance Co.*, 266 Ill. App. 3d 1049. Neither of the parties have called this case to our attention, perhaps because the facts were more convoluted and the positions of the parties somewhat reversed compared to this case. But among the questions presented to the court was the interpretation of a provision nearly identical to Condition IV here–and we determined that it was not an excess clause but an escape clause. *Id.* at 1054-55. An endorsement in that policy provided that the policy " '[did] not apply to that portion of the loss for which [the insured] has other valid and collectible insurance.' " *Id.* at 1052. We interpreted that provision as excluding coverage where any other insurance policy applied, *not* as providing excess coverage. *Id.* at 1054-55. Here, we are presented with similar language and reach the same conclusion.

¶ 40 We find additional support for our conclusion in *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.*, 150 Ill. App. 3d 479, 483 (1986), where, in an admittedly different context, we wrote that "[t]he terms 'valid and collectible' are directed to an insurance policy which is legal and valid, as distinguished from one which was procured by fraud or cannot be collected due to insolvency of the company." This language further supports defendant's position that, in order to disclaim coverage under Condition IV, defendant was only required to demonstrate the existence of a valid insurance policy, not procured by fraud or rendered worthless by virtue of the insurance company's insolvency–it did *not* depend on whether that primary insurance coverage did or did not cover the loss in whole.

¶ 41 Reading the policy as a whole, the parties' intent is clear. Pursuant to Condition IV, defendant undertook to provide primary coverage where, for some reason, the automobile liability insurance for the trucks brokered by the insured, Jack Gray, completely failed due to invalidity or insolvency. If Jack Gray could collect at all from that primary insurance, then defendant's policy would not apply. A complete reading of the policy does not permit us to convert Condition IV into an excess coverage provision.

¶ 42 Plaintiff contends that our interpretation of the policy renders it illusory. As we previously noted, the policy required that Jack Gray obtain proof of the automobile liability insurance carried by the trucks it brokered. Thus, plaintiff argues, by requiring Jack Gray to obtain valid automobile liability insurance but then denying coverage if plaintiff has valid automobile liability insurance, the policy effectively covers nothing at all. But as we have explained above, we agree with defendant that the point of the policy was to cover the insured's loss in the very specific contingency that the underlying insurance failed, either because it was invalid for

some reason or because it had become wholly uncollectible for some reason such as the insurance company's insolvency. That is the deal the parties struck, and we will not alter it.

¶ 43 Plaintiff cites *O'Neal v. Argonaut Midwest Insurance Co.*, 415 S.W.3d 720 (Mo. Ct. App. 2013), but we do not find this case persuasive. In *O'Neal*, the policy at issue contained a "contingency clause" stating that the policy only applied when the other required insurance on the leased automobile was " 'not in effect or [was] not collectible.' " *Id.* at 722, 725. While the court, applying the dictionary definition of the term "collectible," found that that term meant "due for present payment," it ultimately held that the other policy was not collectible because the driver of the car was expressly excluded as an insured in the other policy. (Internal quotation marks omitted.) *Id.* at 725. Because the driver was not an insured under the other policy, the parties could not collect from that policy, and the contingency clause was satisfied. *Id.* In this case, unlike the driver in *O'Neal*, it is undisputed that Jack Gray was able to collect under the Northland policy. Thus, the holding of *O'Neal* is inapplicable.

¶ 44 As there was other "collectible" insurance available to Jack Gray, defendant did not have a duty to defend Jack Gray in the lawsuit. And defendant thus had no duty to indemnify Jack Gray for any losses it incurred, either. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 398. Accordingly, the trial court did not err in dismissing the complaint.

¶ 45                                                    C. Estoppel

¶ 46 Plaintiff's final contention is that defendant is estopped from raising its arguments regarding coverage because it denied coverage without seeking a declaratory judgment that it was not obliged to cover the accident or defending the suit under a reservation of rights. Plaintiff contends that, because defendant simply denied coverage, it could not later claim that the policy did not cover the accident.

¶ 47 The doctrine of estoppel holds that an insurer may not simply deny coverage when a complaint alleges facts potentially covered by a policy. *Ehlco*, 186 Ill. 2d at 150. Instead, the insurer must either seek a declaratory judgment that the policy does not cover the suit or defend the suit while reserving its rights under the policy. *Id.* If the insurer fails to take these steps, and is subsequently found to have wrongfully denied coverage, then it may not later assert policy defenses to avoid coverage. *Id.* at 150-51; *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 208 (1991). For example, an insurer may not wrongfully deny coverage and then raise defenses such as the insured's failure to provide timely notice of a lawsuit (*Ehlco*, 186 Ill. 2d at 154), waiver (*Statewide Insurance Co. v. Houston General Insurance Co.*, 397 Ill. App. 3d 410, 424 (2009)), or cancellation of the policy (*American Standard Insurance Co. of Wisconsin v. Gnojewski*, 319 Ill. App. 3d 970, 978 (2001)).

¶ 48 But estoppel does not apply where the insurer ultimately prevails in its argument that it has no duty to defend. *Ehlco*, 186 Ill. 2d at 151 ("Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered."). In other words, the estoppel doctrine cannot create coverage where none existed in the first place. *Ismie Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC*, 397 Ill. App. 3d 964, 974 (2009). As stated above, the policy did not provide coverage for the loss in this case. Because defendant had no duty to defend, estoppel does not apply.

## III. CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court. Defendant owed its insured no duty to defend or indemnify where its contingent liability policy only provided coverage if there was no other collectible insurance, and the policy did not suggest that defendant would provide excess coverage for this loss.

Affirmed.