2016 IL App (1st) 141392

FOURTH DIVISION
May 19, 2016

No. 1-14-1392

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES DAHMS, | ) | No. 12 CH 43692 |
| | ) | |
| Defendant and Counterplaintiff-Appellant | ) | |
| | ) | |
| (Terry Enadeghe, | ) | Honorable |
| | ) | LeRoy K. Martin, Jr. |
| Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    This declaratory-judgment action involves an insurance coverage dispute as to whether plaintiff-counterdefendant, Country Mutual Insurance Company (Country Mutual), has a duty to defend its insured, defendant-counterplaintiff, Charles Dahms, in an underlying tort lawsuit. The plaintiff in the tort lawsuit against Dahms pleaded causes of action for negligence and battery. About six months after the tort action against Dahms was filed, Dahms was convicted of aggravated battery stemming from the same events.

¶ 2    Country Mutual and Dahms filed cross-motions for summary judgment in the declaratory-judgment action. The circuit court ruled that Country Mutual had a duty to defend

Dahms, because Dahms had filed an affirmative defense of self-defense in the tort case. The circuit court later clarified its ruling, finding that the duty to defend did not arise until the date Dahms filed his answer and affirmative defenses in the tort action.

¶ 3     Dahms appeals from the circuit court's decision; he agrees with the trial court's finding of a duty to defend but disagrees as to the trigger date. Country Mutual cross-appeals, arguing for various reasons that it had no duty to defend the underlying lawsuit—including the fact that Dahms's criminal conviction for the same conduct bars coverage under the policy's exclusion for "criminal acts."

¶ 4     We agree with the trial court that Country Mutual owed a duty to defend Dahms in the tort action, but we hold that this duty arose the moment the tort lawsuit was filed, not when Dahms pleaded his affirmative defenses in that lawsuit. We affirm the trial court's ruling as so modified. We further hold, however, that Country Mutual's duty terminated on the date that Dahms was criminally convicted for the same conduct because, as of that moment, his conduct fit with the policy's criminal-act exclusion. Thus, we affirm the trial court's judgment in part as modified and reverse in part.

¶ 5                          I. BACKGROUND

¶ 6     This appeal involves a dispute between Dahms and Country Mutual regarding coverage under a homeowners insurance policy. The underlying incident between Dahms and Enadeghe gave rise to three separate actions: (1) a personal injury action filed against Dahms by Terry Enadeghe (the Tort Case); (2) a criminal case against Dahms (the Criminal Case); and (3) this declaratory-judgment action filed by Country Mutual. Our discussion below includes the procedural history of each action, in somewhat chronological order, necessary to an understanding of the issues on appeal.

¶ 7                           A. Underlying Incident

¶ 8     Dahms and Enadeghe had an altercation on October 10, 2011, arising from an incident in downtown Chicago in which Enadeghe pulled his taxi cab up to a crosswalk near Dahms, who was a pedestrian. The complaint alleges, in sum, that Dahms's briefcase made contact with the windshield of Enadeghe's cab; Enadeghe then left his car and pursued Dahms on foot; and a scuffle ensued in which Dahms struck Enadeghe with his briefcase, injuring Enadeghe.

¶ 9                           B. The Tort Case

¶ 10    Enadeghe filed a two-count complaint against Dahms on October 9, 2012, in the circuit court of Cook County (No. 2012 L 011436). Count I alleged negligence; count II alleged battery. Each count alleged that Dahms's briefcase "made contact with the motor vehicle occupied by [Enadeghe], causing damage to the windshield." Each count also alleged that, after Enadeghe confronted Dahms on the street and demanded payment for the damage to the windshield, Dahms "physically struck [Enadeghe] with a briefcase, knocking [Enadeghe] unconscious and causing him to fall to the ground."

¶ 11    Count II alleged that Dahms's striking of Enadeghe with the briefcase was a battery. Count I called it negligence, alleging that Dahms "[m]ade physical actions with his hands and fists toward [Enadeghe]," "[s]wung a briefcase in close proximity to the body of the [Enadeghe]," and "[f]ailed to warn of one or more of these negligent acts or omissions." The final paragraph of the negligence count alleged that, as a result of "one or more of these negligent acts or omissions, [Enadeghe] suffered injuries—both temporary and permanent—to his personal and pecuniary interests."

¶ 12                  C. Dispute Over Coverage for the Tort Case

¶ 13    The coverage dispute between Dahms and Country Mutual arose before Enadeghe filed suit. On June 27, 2012, Enadeghe's counsel sent a letter to Dahms notifying him of Enadeghe's potential claim. Dahms then requested coverage from Country Mutual, with which Dahms had a homeowner's insurance policy. On September 5, 2012, Country Mutual notified Dahms that it was denying his claim because: (1) the allegations did not constitute an "occurrence" under the homeowner's policy; and (2) even if it did, the policy contained an exclusion for "criminal acts." As the letter explained, Enadeghe's counsel "state[d] that his client was assaulted during an altercation with [Dahms] on October 10, 2011."

¶ 14    Dahms retained independent counsel, who faxed a letter to Country Mutual on October 15, 2012. The letter informed Country Mutual that Dahms had exercised his right to retain independent counsel because Country Mutual had expressed interests "divergent" from Dahms. The letter also noted that Enadeghe had filed suit and that his complaint contained at least one claim that was covered under Dahms's homeowner's policy.

¶ 15                    D. Country Mutual's Declaratory-Judgment Action

¶ 16    On December 10, 2012, Country Mutual filed this declaratory-judgment action, asserting that it had no duty to defend or indemnify Dahms in connection with Enadeghe's underlying lawsuit. Country Mutual noted that, as a result of the October 2011 incident, Dahms had been charged with aggravated battery, and the charge was "still pending." Similar to the position it took in its September 5, 2012 letter to Dahms, Country Mutual claimed that there was no liability coverage under the policy because the allegations did not constitute an "occurrence," which the policy defined as an "accident," and that any claim was barred by the policy's "criminal acts" exclusion. Country Mutual also argued that any potential liability coverage under the policy was barred by the "expected or intended injury" exclusion.

¶ 17    At this point, all three actions—this declaratory-judgment action, the Criminal Case, and the Tort Case—proceeded. Below we summarize the subsequent developments that were relevant to the disposition of the declaratory-judgment action.

¶ 18                                1. The Criminal Case

¶ 19    On March 20, 2013, Dahms was convicted of aggravated battery in criminal court. He appealed. On April 23, 2015, this court affirmed Dahms's conviction in an unpublished order. See *People v. Dahms*, 2015 IL App (1st) 133301-U. The Illinois Supreme Court denied Dahms's petition for leave to appeal on September 30, 2015. On March 7, 2016, the United States Supreme Court denied Dahms's petition for *certiorari*.

¶ 20                          2. The Declaratory-Judgment Action

¶ 21    On September 25, 2013, in the declaratory-judgment action now under review, Dahms filed a counterclaim, seeking a declaration that Country Mutual owned him a duty to defend, that it breached its insurance contract, and that it had engaged in bad faith in violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)). On November 21, 2013, Country Mutual amended its complaint for declaratory judgment, to add the fact of Dahms's conviction for aggravated battery in further support of its claim that it had no duty to defend Dahms.

¶ 22                                3. The Tort Case

¶ 23    Meanwhile, on March 6, 2013, Enadeghe amended his complaint in the Tort Case. Like the original complaint, the first amended complaint contained two counts, one for negligence and one for battery. The amended complaint modified the battery count, alleging that when Dahms struck Enadeghe with the briefcase, he did so "without consent and with intent to harm."

¶ 24    On October 31, 2013, Dahms answered Enadeghe's amended complaint and pleaded affirmative defenses, including self-defense. He alleged that he "used reasonable efforts and

force to protect himself and/or his property from Enadeghe." Dahms also filed a two-count counterclaim against Enadeghe, alleging negligence and battery.

¶ 25                    4. Summary Judgment in the Declaratory-Judgment Action

¶ 26    In the declaratory-judgment action, Country Mutual and Dahms filed cross-motions for summary judgment in the circuit court. The trial court ruled that Country Mutual was obligated to pay for Dahms's defense, but it later entered an order clarifying that Country Mutual's obligation was limited to the period after Dahms filed his answer and affirmative defenses on October 31, 2013, the first time that Dahms asserted self-defense. Self-defense, the court reasoned, was an exception to the exclusion of coverage in the policy and thus triggered Country Mutual's duty to defend. The court later entered an order containing Rule 304(a) language. Dahms filed the instant appeal, and Country Mutual filed a cross-appeal.[1]

¶ 27                        E. Relevant Policy Provisions

¶ 28    Dahms had a homeowner's insurance policy with Country Mutual. In the portion concerning liability coverage, the policy states, in pertinent part, that Country Mutual will provide a defense "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies."  In the definitions section of the policy, "occurrence" is defined, in pertinent part, as an "accident." The word "accident" is not further defined.

¶ 29    The policy contains an exclusion to its liability coverage for "expected or intended injury" (the intentional-act exclusion):

---

[1] We filed our original decision in this appeal on September 30, 2015. Country Mutual filed a petition for rehearing, contending that we had misconstrued the criminal-acts exclusion in the policy. Pursuant to Illinois Supreme Court Rule 367(d) (eff. Jan. 1, 2015), we ordered Dahms to file an answer and Country Mutual to file a reply. We granted Country Mutual's petition for rehearing and withdrew our original decision. This opinion will now stand as our resolution of this matter.

"**E. Liability, Coverage A** \*\*\* [does] not apply to the following:

**1.   Expected Or Intended Injury**

'Bodily injury' or 'property damage' that may reasonably be expected or intended

to result from the intentional acts of an 'insured' even if the resulting 'bodily

injury' or 'property damage':

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real property or personal property,

than initially expected or intended.

This exclusion applies regardless of whether any 'insured' personally participated

in or committed the alleged act and regardless of whether any 'insured'

subjectively intended the 'bodily injury' or 'property damage' for which a claim is

made.

However, this Exclusion E.1 does not apply to 'bodily injury' resulting from the

use of reasonable force by an 'insured' to protect persons or property."

¶ 30   The policy also contains an exclusion for "criminal acts" (the criminal-acts exclusion):

"**E. Liability, Coverage A** \*\*\* [does] not apply to the following:

**9.   Criminal Acts**

'Bodily Injury' or 'property damage' arising from any criminal act. Criminal act

means any act or omission which is criminal in nature or for which a penal statute

or ordinance permits or requires any term of imprisonment or sentence or public

service duties. This exclusion applies regardless of whether any 'insured' is

actually charged with or convicted of a crime and regardless of whether any

'insured' subjectively intended the 'bodily injury' or 'property damage' for which a claim is made."

¶ 31                                          II. ANALYSIS

¶ 32    Country Mutual's position is that the allegations in the Tort Case against Dahms do not trigger coverage because the complaint does not allege an "accident," and thus cannot be considered an "occurrence" under the policy. Country Mutual also argues that the complaint in the Tort Case alleges an intentional battery only, and thus, even if the policy otherwise applied, coverage would be excluded as an "expected or intended injury." Third, Country Mutual claims that Dahms's actions fell within the exclusion for "criminal acts."

¶ 33    Dahms claims that the underlying complaint triggered Country Mutual's duty to defend for two reasons. First, the complaint in the Tort Case, among other things, claimed property damage—damage to the windshield of Enadeghe's cab—which was not alleged to be an intentional act. Second, count I of the complaint in the Tort Case alleged that Dahms negligently, not intentionally, struck Enadeghe with the briefcase during their face-to-face confrontation. For either of those reasons, Dahms argues, the underlying complaint alleged an "accident," at least in count I, triggering coverage under the policy. For these same reasons, he argues, the exclusions for intentional or criminal acts do not apply.

¶ 34                                     A. Standard of Review

¶ 35    Where, as here, cross-motions for summary judgment are filed, and the parties agree that no factual issues exist, this case turns solely on legal issues subject to *de novo* review. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 73); *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). Whether an insurer has a duty to defend

involves the construction of an insurance contract, to which we also apply a *de novo* standard of review. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 36                                    B. Insurer's Duty to Defend

¶ 37     An insurer's duty to defend is much broader than its duty to indemnify. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154 (2005). In a declaratory-judgment action regarding an insurer's duty to defend, "a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). If the facts alleged in the underlying complaint fall within, or *potentially* within, the policy's coverage, the insurer's duty to defend is triggered. *Id*. This principle has been referred to as the "eight corners rule." See *Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 694, 698 (2000) (the "court should compare the four corners of the underlying complaint with the four corners of the insurance contract").

¶ 38     The allegations must be liberally construed in favor of the insured. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). If the allegations potentially fall within the policy's coverage, the duty to defend exists, even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy. *Id.* In determining whether an insurer has a duty to defend, the court should not delve into the merits of the underlying case or determine a critical issue in that lawsuit. *Bartkowiak v. Underwriters at Lloyd's, London*, 2015 IL App (1st) 133549, ¶¶ 20, 25. Nor is the duty to defend annulled by knowledge on the part of the insurer that the allegations are untrue or incorrect, or that the true facts will ultimately exclude coverage. *Lorenzo v. Capitol Indemnity Corp.*, 401 Ill. App. 3d 616, 619 (2010). "The *potential*[]

of liability is what gives rise to the duty to defend, even though there may not be a high probability of recovery under the terms of the contract." (Emphasis added.) *Hertz Corp. v. Garrott*, 207 Ill. App. 3d 644, 648 (1990).

¶ 39          C. Country Mutual's Duty to Defend Prior to Dahms's Conviction

¶ 40     We first consider whether Country Mutual had a duty to defend during the time period beginning with the filing of the underlying complaint in the Tort Case (October 9, 2012) and ending with Dahms's conviction for aggravated battery arising from the same conduct that spawned the lawsuit (March 20, 2013).

¶ 41          1. Whether the Underlying Complaint Alleges an "Accident"

¶ 42     We begin by determining whether the allegations in the underlying lawsuit fit within the policy's coverage at all. As we explained above, the coverage applies to liability for damages for bodily injury or property damage arising from any "occurrence," which for our purposes includes any "accident." We must compare the language of the policy with the four corners of the underlying complaint.

¶ 43     Dahms focuses on count I of the underlying lawsuit, which alleged the following against Dahms:

> 1. Dahms was a pedestrian near 310 South Clinton Street in Chicago;
>
> 2. Enadeghe was in a motor vehicle at the same location;
>
> 3. Enadeghe was peacefully conducting himself;
>
> 4. Dahms's briefcase made contact with the vehicle, causing damage to the windshield;
>
> 5. Enadeghe got out of the vehicle and asked Dahms to pay for the damage to his windshield;

6. Dahms refused to pay for the damage;

7. Dahms physically struck Enadeghe with a briefcase, knocking Enadeghe unconscious and causing him to fall to the ground;

8. Dahms was negligent in one or more of the following ways:

a) Made physical actions with his hands and fists toward Enadeghe;

b) Swung a briefcase in close proximity to Enadeghe's body; and

c) Failed to warn of one or more of these negligent acts or omissions.

9. "As a proximate result of one or more of these negligent acts or omissions, Enadeghe suffered injuries—both temporary and permanent—to his personal and pecuniary interests."

(Count II, it should be noted, contains virtually identical allegations except that it omits the word "negligent" and alleges the intentional tort of battery.)

¶ 44    Country Mutual argues that count I alleges an intentional act, notwithstanding count I's use of the word "negligent." Because an intentional act is not an "accident," it reasons, the policy's coverage was not triggered.

¶ 45    An "accident" is "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character. [Citation.]" (Internal quotation marks omitted.) *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 2011 IL App (1st) 101316, ¶ 26 (and cases cited therein). In determining whether an occurrence is an "accident," Illinois courts have focused on whether the injury is expected or intended from the standpoint of the insured. *USAA Casualty Insurance Co. v. McInerney*, 2011

IL App (2d) 100970, ¶ 15. If an injury is not expected or intended by the insured, it is considered an accident. *American Family Mutual Insurance Co. v. Enright*, 334 Ill. App. 3d 1026, 1031 (2002). Generally speaking, an injury caused by an assault and battery is *not* considered to be accidental. *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619 (1980).

¶ 46     Our supreme court has cautioned against deciding the ultimate fact of the insured's intent in an underlying lawsuit during a declaratory-judgment action over the duty to defend that lawsuit. See *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 467 (2010) (in declaratory-judgment case, declining to rule, as matter of law, that insured acted "intentionally" and not in self-defense and noting that doing so would be "condoning the resolution of the issue at the heart of the underlying lawsuit"); *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976) ("The finding of the trial court *** that the injury was intentional was not proper in this declaratory judgment action. This issue was one of the ultimate facts upon which recovery is predicated in the [underlying lawsuit] ***."); see also *Bartkowiak*, 2015 IL App (1st) 133549, ¶¶ 20, 25; *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 866 (1988). The concern is that "declaratory judgments prior to the resolution of the underlying tort case might resolve 'an issue crucial to the insured's liability in the personal injury action and also one on which punitive damages could ultimately be assessed *** in a purely ancillary proceeding[,] with the plaintiff and defendant in the personal injury action both aligned on the same side as defendants in the declaratory judgment action.' " *Allstate Insurance Co. v. Carioto*, 194 Ill. App. 3d 767, 774 (1990) (quoting *Thornton v. Paul*, 74 Ill. 2d 132, 159 (1978), *overruled in part on other grounds by American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000)).

¶ 47     On the other hand, we have not been blind to the fact that plaintiffs may have an incentive to draft pleadings in a way that triggers the defendant's insurance coverage. See, *e.g.*,

*Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 40; *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 522 (2005). Thus, we give " 'little weight to the legal label that characterizes the underlying allegations.' " *Danner*, 2012 IL App (4th) 110461, ¶ 39 (quoting *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 135 (2001)). Even where a complaint alleges an act is "negligent," if the allegations show that what is truly alleged can only be characterized as an intentional act, the substance will control over the moniker placed on it by a plaintiff.  See *id.*; *Lexmark*, 327 Ill. App. 3d at 135-36.

¶ 48     The tension between our reluctance to predetermine the outcome of a critical issue in the underlying lawsuit, on the one hand, and our refusal to allow a plaintiff, via creative pleading, to manufacture insurance coverage that otherwise would not exist, on the other, has played itself out in the case law. For example, in *Carioto*, 194 Ill. App. 3d at 770-71, the insured had pleaded guilty to attempted murder after he robbed a victim and proceeded to stab him between 15 and 17 times; he had also told his accomplice, before the robbery, that " 'he was going to stab the [victim] and kill him.' " *Id*. at 770. The victim filed a civil action against the insured while the insured was serving his prison sentence. *Id.* at 771. The initial complaint alleged intentional acts. *Id.* And at his deposition in prison, the insured admitted that his actions were intentional, not negligent. *Id*. at 773. But two years after the original complaint was filed, in a third amended complaint, for the first time, the victim alleged that the insured was negligent, in that the insured " 'carelessly and negligently fell on and/or came into contact with' " the victim, " 'carelessly and negligently failed to refrain from avoiding' " the victim, and " 'carelessly and negligently struck and/or came into contact with' " the victim. (Emphases omitted.)  *Id*. at 771.

¶ 49     We saw through these "facetious" allegations of negligence, concluding that there was no *bona fide* controversy over whether the alleged conduct was negligent versus intentional. *Id*. at

775. We found the nature of the assault, the insured's conviction, and the insured's judicial admission of intentional conduct at his deposition to be "conclusive evidence of intentional conduct." *Id*. We emphasized, however, that ordinarily we would be loath to reach this conclusion at so early a stage in the underlying tort proceeding: "we believe it is proper for a declaratory judgment court to decide the coverage issue before resolution of the tort action in the rare case, such as this one, where there is conclusive evidence that the insured acted intentionally." *Id*. at 776.

¶ 50    In *Danner*, 2012 IL App (4th) 110461, ¶ 5, the underlying lawsuit alleged that the two insureds attacked the victim after the victim entered onto the insured's property to retrieve a baseball hit by his son. The complaint alleged that one of the insureds got into his pickup truck, drove it at a high rate of speed, and struck the victim. *Id*. ¶ 6. He then got out of his truck and struck the victim three times with a golf club. *Id*. The other insured allegedly repeatedly kicked and punched the victim while he lay on the ground, wounded. *Id*. ¶ 7. The insurance company filed a declaratory-judgment action, seeking a declaration that it had no duty to defend the insureds in the lawsuit, as the policy only covered " 'occurrence[s],' " defined as "accidents." *Id*. ¶ 10. Just before a hearing on the insurer's motion for judgment on the pleadings, the victim in the underlying tort case amended his complaint, adding, for the first time, allegations of negligence—that the insured drove his truck too fast and " 'failed to regain control' " of it before it struck the victim, and that the other insured, who kicked the victim while he lay on the ground, " 'acted negligently' " in doing so while trying to stop the fight. *Id*. ¶¶ 12-13.

¶ 51    We held that the insurer had no duty to defend, as the complaint as a whole—considering both the intentional battery counts as well as the newer negligence counts—did not allege an "accident." *Id*. ¶ 40. We first noted that the negligence count alleging that one of the insureds

drove the truck and " 'failed to regain control of it' " (*id*. ¶ 12) had omitted the facts (contained in the battery count) that, after he left the truck, he proceeded to beat the victim with a golf club. *Id*. ¶ 40. We found it "difficult to see how striking [the victim] with the vehicle was merely unintended" when he followed it up with a beating with a golf club. *Id*. We also took note of the timing of the new negligence counts, coming on the eve of the insurer's argument for judgment on the pleadings in its declaratory-judgment case. *Id*. We found the new negligence counts to be a " 'transparent attempt to trigger insurance coverage.' " *Id*. (quoting *Dial*, 355 Ill. App. 3d at 522).

¶ 52     Justice Pope dissented, however, noting that Illinois allows liberal amendment of pleadings, and that the relevant question before that court was whether the allegations of the complaint would *potentially* fall within the policy's coverage. *Id*. ¶¶ 57-59 (Pope, J., specially concurring in part and dissenting in part). The dissent stressed that "[w]hether [the insured's] acts were in fact intentional *** or negligent *** is a matter for the trier of fact in the underlying lawsuit, not this court, to determine." *Id.* ¶ 60.

¶ 53     Finally, in *West American Insurance Co. v. Vago*, 197 Ill. App. 3d 131, 133, 137 (1990), where the complaint alleged that the insured "grabbed [the victim] from behind, locked his arms around her waist, and thrust his pelvis against her buttock several times while having an erection," all the while "ke[eping] her in his grasp and prevent[ing] her from escaping," we found it undeniable that an intentional sexual assault was alleged, no matter how the underlying complaint tried to dress up the claims as "negligent."

¶ 54     As the rather extreme examples in these cases demonstrate, it should be the "rare" case that we are so confident that the allegations could not possibly be considered to describe "negligent" conduct, and can only be credibly characterized as intentional conduct, that we can

say that the allegations in an underlying complaint could not even *potentially* fall within the coverage of a policy. *Carioto*, 194 Ill. App. 3d at 776.

¶ 55    The allegations contained in the underlying complaint in the Tort Case do not fit within that "rare case." They allege nothing close to repeated stabbings (*id.* at 771), forcible sexual assault (*Vago*, 197 Ill. App. 3d at 133), or attempting to run someone over in a truck and then proceeding to beat the individual with a golf club (*Danner*, 2012 IL App (4th) 110461, ¶ 6). The complaint alleges only two physical acts committed by Dahms: that, when Enadeghe confronted Dahms, Dahms "made physical actions with his hands and fists toward [Enadeghe]" and "swung a briefcase in close proximity to the body of [Enadeghe]." But there is no allegation that Dahms hit Enadeghe with this fists or hands, only with his briefcase—so the fist-and-hand "physical actions" could either mean that Dahms swung and missed Enadeghe with his fists or that he was gesturing angrily. The only contact alleged is the "swinging" of the briefcase that struck Enadeghe.

¶ 56    These sparse allegations do not conclusively establish an intentional act. The allegations describe a scenario where Enadeghe left his vehicle and confronted Dahms on the street, demanding that Dahms pay for the damage to his windshield. How, exactly, Dahms came to strike Enadeghe with his briefcase is by no means clear. The allegations could describe a scuffle in which any striking of Enadeghe could have been less than a deliberate, intentional act. It could describe a struggle over the briefcase itself. To be sure, it could describe a scenario in which Dahms used the briefcase as an offensive weapon in an intentional manner, but it could just as possibly describe the defensive use of that briefcase or a mere accident. The bottom line is that, while we could certainly conceive of a scenario in which these allegations described intentional

conduct, we likewise could see the potential that these actions demonstrate less than intentional behavior, be it recklessness or even, as alleged in count I, negligence.

¶ 57    We are concerned here only with whether the claim *potentially* falls within the terms of the policy. We are not prepared to say, as a matter of law, that these allegations so clearly support an inference of intent that all other possible inferences are excluded.

¶ 58    Country Mutual also cites *Freyer*, 89 Ill. App. 3d 617, a case concerning the duty to defend a lawsuit that alleged an assault and battery, as well as damage to property. The underlying complaint alleged that the insured, in both June and November 1984, violently assaulted the victim, striking her face and head with his fists and tearing out some of her hair; in the June incident, which occurred at the victim's home, the insured also ripped the victim's phone from the wall and destroyed it. *Id.* at 618-19. But that decision did not grapple with the distinction between a negligent act and an intentional one in an underlying complaint; the victim's lawsuit pleaded *only* intentional torts and, in fact, asked for a finding of malice so that she could seek punitive damages. *Id.* at 619. The insured in *Freyer* claimed that the complaint did not allege that he subjectively intended harm to the victim—an argument the court rejected (*id.* at 622)—but did not argue that the allegations of the underlying complaint pleaded negligence. *Id.* at 621-22. That case does not assist Country Mutual.

¶ 59    In sum, it is not "clear" from the face of the underlying complaint that the allegations could not potentially fall within the policy's coverage. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 153 (1999). We hold that the allegations in count I of the underlying complaint could potentially fall within the policy's coverage for an "accident."

¶ 60                    2. Whether the Intentional-Acts Exclusion Bars Coverage

¶ 61    We next consider whether either of the two exclusions in the policy on which County

Mutual relies are applicable. The first of those is an exclusion for bodily injury "that may

reasonably be expected or intended to result from the intentional acts of an 'insured.' "  If it

seems redundant for an insurance policy to only apply to "accidents" but then to also contain an

exclusion for "intentional" acts, that is because it is. We have previously explained that

"insurance companies, in order to make this limitation of coverage absolutely clear and

inescapable, include an exclusion for 'intentional injuries' caused by the insured." *Freyer*, 89 Ill.

App. 3d at 619. Noting this overlap, in considering whether the allegations of an underlying

complaint alleged an "accident" under an insurance policy, we have asked " 'whether the person

performing the acts leading to the result intended or expected the result.' " *State Farm Fire &*

*Casualty Co. v. Young*, 2012 IL App (1st) 103736, ¶ 26 (quoting *Country Mutual Insurance Co.*

*v. Carr*, 372 Ill. App. 3d 335, 341 (2007)).

¶ 62    Indeed, Country Mutual merges these two issues within one section of its brief.  In its

discussion of whether the allegations potentially described an "accident," or whether they clearly

describe an "intentional act," Country Mutual cites case law interchangeably between the two

questions. For example, *Danner*, 2012 IL App (4th) 110461, ¶ 40, discussed above, had the same

coverage language (for "accidents") and a very similar exclusion for intentional injuries, but the

court ultimately held that the insured's striking of the victim with his car, and later his battery of

the victim with a golf club, was not an "accident." It decided the issue on the coverage language,

not the exclusion. In contrast, *Freyer*, 89 Ill. App. 3d at 622, which concerned the same policy

coverage for "accidents" and a similar intentional-injury exclusion, appeared to base its

holding—that the underlying complaint alleged purely intentional conduct—on the exclusion.

¶ 63     For the same reasons that the allegations in the underlying complaint could potentially allege an accident, the exclusion for intentional acts is not applicable to the allegations of the underlying complaint.[2]

¶ 64                         3. Whether the Criminal-Acts Exclusion Bars Coverage

¶ 65     Having determined that the allegations of the underlying complaint potentially fall within coverage, and having further found that the intentional-acts exclusion does not clearly apply, we are left with Country Mutual's argument that the criminal-acts exclusion applies. Again, that exclusion provides that Country Mutual will exclude liability insurance coverage for:

> " 'Bodily Injury' or 'property damage' arising from any criminal act. Criminal act means any act or omission which is criminal in nature or for which a penal statute or ordinance permits or requires any term of imprisonment or sentence or public service duties. This exclusion applies regardless of whether any 'insured' is actually charged with or convicted of a crime and regardless of whether any 'insured' subjectively intended the 'bodily injury' or 'property damage' for which a claim is made."

¶ 66     We repeat two principles in analyzing this issue. First, we must only determine whether the allegations in the Tort Case fall within, or *potentially* within, the policy's coverage. *Pekin Insurance Co.*, 237 Ill. 2d at 455; *Valley Forge Insurance Co.*, 223 Ill. 2d at 363. Second, "a policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005); see also *Erie Insurance Exchange v.*

---

[2] Thus, we need not address Dahms's claim that Country Mutual is estopped from raising the expected-or-intended-injury exclusion because it did not raise that basis for denial of coverage when Dahms first tendered the claim to Country Mutual. We also need not address the self-defense exception to this exclusion, since the exclusion does not apply in the first instance.

*Compeve Corp.*, 2015 IL App (1st) 142508, ¶ 17 (applicability of policy exclusion must be "clear and free from doubt") (internal quotation marks omitted). "[P]rovisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997); accord *Country Mutual Insurance Co. v. Hilltop View, LLC*, 2013 IL App (4th) 130124, ¶ 26.

¶ 67    With these principles in mind, we hold that, at the outset of the Tort Case, before Dahms was found guilty beyond a reasonable doubt of aggravated battery, the language of the criminal-acts exclusion was not so clear and free from doubt that we could say that there was no possibility of coverage to Dahms. It would be possible to read the complaint in the Tort Case as alleging a criminal act. And the fact that Dahms was charged with a criminal act arising from this incident might make that conclusion even more tempting. But the allegations of the complaint in the Tort Case—Dahms's striking of Enadeghe with a briefcase—could possibly be viewed as an accident, an act of self-defense, or intentional conduct, the first two of which could not be considered "criminal" in any sense of that word. In the face of competing reasonable interpretations of a complaint's allegations, an insurer may not adopt the interpretation that favors exclusion and disregard those reasonable interpretations that favor coverage.

¶ 68    Before Dahms was convicted of aggravated battery, and based only on the allegations in the complaint, it was not clear and free from doubt that Dahms had engaged in a criminal act. Thus, at the time the complaint was filed in the Tort Case, before Dahms had been convicted, Country Mutual could not avoid its duty to defend based on the criminal-acts exclusion.

¶ 69    In arguing otherwise, Country Mutual points to the language stating that the exclusion applies *regardless* of whether the insured is actually charged with or convicted of a crime. So it does. But that does not give Country Mutual unbridled authority to decide what is "criminal in

nature" and what is not. As we have just explained, the exclusion's application to the allegations of the Tort Case must be clear and free from doubt, and we do not think that the allegations of the Tort Case clearly established a criminal act.

¶ 70     Country Mutual's reliance on *Allstate Insurance Co. v. Greer*, 396 Ill. App. 3d 1037 (2009) is unavailing. In *Greer*, the underlying complaint alleged that the insureds "supplied alcoholic beverages to the [17-year-old] decedent, causing him to become intoxicated and impaired, which caused him to die while driving a motor vehicle." *Id*. at 1039. As this court explained: "These allegations describe criminal conduct." *Id*.; see 235 ILCS 5/6-16 (West 2006) ("[n]o person, after purchasing or otherwise obtaining alcoholic liquor, shall sell, give, or deliver such alcoholic liquor to another person under the age of 21 years"). The record showed that one of the insureds had been convicted of the misdemeanor of willfully supplying alcohol to a minor. *Greer*, 396 Ill. App. 3d at 1038. And the insureds, as far as the opinion discloses, argued against the criminal-acts exclusion because there was no evidence that they intended to harm the minor when they provided him with alcohol (*id*. at 1040)—in other words, the insureds never denied engaging in the conduct that constituted a criminal act, the supplying of alcohol to a minor. In the case before us, Dahms never conceded that he engaged in a criminal act. Before he was convicted, Country Mutual could not presume clearly and without doubt that Dahms had, in fact, committed a criminal act.

¶ 71     We thus hold that, before Dahms was convicted of aggravated battery, Country Mutual could not rely on the criminal-acts exclusion to deny coverage.

¶ 72     Having found that the policy covered the allegations of the Tort Case and having rejected the exclusions on which Country Mutual relies, we hold that Country Mutual's duty to defend

was triggered by the filing of the complaint in the Tort Case. We next turn to the impact of Dahms's subsequent conviction on that duty to defend.

¶ 73        D. Country Mutual's Duty to Defend After Dahms's Conviction

¶ 74    As noted, on March 20, 2013, Dahms was convicted of aggravated battery. In *Allstate Indemnity Co. v. Hieber*, 2014 IL App (1st) 132557, we considered the applicability of a criminal-acts exclusion where the insured had been criminally convicted. Unlike the criminal-acts exclusion here, the exclusion at issue in *Hieber* additionally required that any bodily injury or property damage be " 'intended by' " the insured or " 'reasonably be expected to result from' " the insured's acts or omissions. *Id*. ¶ 3. But the court's analysis of whether the insured's act was a "criminal act" is relevant here. Specifically, the court in *Hieber* considered whether the insured's "act of handling [a] gun was 'criminal.' " *Id*. ¶ 15. Noting that the insured had been convicted after trial of involuntary manslaughter, the court concluded that "under any definition of the word," the act of handling the gun was "criminal." *Id*.; see Black's Law Dictionary 430 (9th ed. 2009) (defining "criminal" as "[h]aving the character of a crime; in the nature of a crime."); Webster's Third New International Dictionary 536 (1993) ("involving or being a crime").

¶ 75    Likewise, while we distinguished the decision in *Greer*, 396 Ill. App. 3d 1037, as inapplicable to Country Mutual's duty to defend *before* Dahms was convicted, *Greer* is on point with regard to Country Mutual's duty to defend *following* Dahms's conviction. See *id*. at 1038-40 (where insured was convicted of supplying alcohol to a minor and insured did not deny doing so, insured committed a "criminal act" within scope of policy exclusion).

¶ 76    In the section of our opinion immediately preceding this one, we held that Country Mutual could not automatically assume that Dahms's striking of Enadeghe was a criminal act before he was convicted, because there were less culpable interpretations of what may have

occurred, including negligence or self-defense. But those competing interpretations became irrelevant after Dahms's criminal conviction. His conviction for aggravated battery meant that a jury had found, beyond a reasonable doubt, that Dahms had, in fact, committed a crime—or, in the words of the policy exclusion, "an act *** for which a penal statute *** permits a[ ] term of imprisonment." At that moment, Country Mutual could not be accused of self-serving, unbridled discretion in determining that Dahms's conduct constituted a criminal act; Country Mutual could point to a jury verdict based on the highest burden of proof known to our legal system. At that moment, the applicability of the criminal-acts exclusion became clear and free from doubt.

¶ 77    We acknowledge that our consideration of the fact of Dahms's conviction, raised in Country Mutual's amended declaratory-judgment action, is evidence that is beyond the four corners of Enadeghe's complaint. Nonetheless, "under certain circumstances, [a court may] look beyond the underlying complaint in order to determine an insurer's duty to defend." *Pekin Insurance Co.*, 237 Ill. 2d at 459. "In fact, ' "[t]he *only time* such evidence should not be permitted is when it tends to determine an issue crucial to the underlying lawsuit." ' " (Emphasis in original.) *Bartkowiak*, 2015 IL App (1st) 133549, ¶ 21 (quoting *Pekin Insurance Co.*, 237 Ill. 2d at 461) (in turn quoting *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.,* 122 Ill. App. 3d 301, 305 (1983)). As the supreme court explained, " '[t]o require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.' " (Emphasis in original omitted.) *Pekin Insurance Co.*, 237 Ill. 2d at 461 (quoting *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 304-05); see also *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1032 (2008) ("the trial court need not wear

judicial blinders and may look beyond the complaint at other evidence appropriate to a motion for summary judgment" (internal quotation marks omitted)).

¶ 78    This is just such an instance. We are not prematurely deciding an issue in the underlying Tort Case. We are not determining whether Dahms's conduct was negligent versus intentional for purposes of the Tort Case. There is no issue of collateral estoppel caused by our ruling. Nor are we finding that Dahms committed a criminal act; a jury already did that. We are just acknowledging the fact of his conviction and finding that, in light of that undisputed fact, a policy exclusion applies. Whatever preclusive effect Dahms's conviction may or may not have on the Tort Case is independent of anything we have said here.

¶ 79    Thus, we affirm the trial court's judgment that the duty to defend exists but modify that ruling as to the trigger date. We hold that the duty to defend ended when Dahms was convicted in his criminal trial.

¶ 80                    E. "Property Damage" Claims in the Tort Case

¶ 81    In the initial briefing as well as the additional briefing on the petition for rehearing, Dahms has raised the additional argument that Country Mutual has a duty to defend the Tort Case because it alleges property damage. He contends that the complaint in the Tort Case claimed property damage—damage to Enadeghe's windshield caused by Dahms's briefcase— which was not alleged to be an intentional act and has never been claimed by anyone to be a criminal act. In other words, he argues, even if his alleged acts in striking Enadeghe himself with the briefcase could be deemed a criminal act, his alleged acts in striking Enadeghe's windshield could not—he was not charged with or convicted of damaging a windshield.

¶ 82    In our previous Rule 23 order (Ill. S. Ct. R. 23 (eff. July 1, 2011)) that we have since withdrawn, it was unnecessary to reach this issue, because we found that the criminal-acts

exclusion did not bar coverage even *after* Dahms was convicted of aggravated battery. As we have reconsidered that decision and found it to be incorrect, and because we now hold that the duty to defend terminated upon Dahms's conviction, we now must reach this additional basis that Dahms asserts for his claim of coverage under the policy. If Dahms is correct that the complaint in the Tort Case alleges damage to property as well as personal injury, then Dahms is entitled to coverage. For the reasons that follow, however, we do not agree that the underlying complaint alleges property damage.

¶ 83    Count II of the complaint in the Tort Case alleges an intentional battery. That count obviously does not allege damage to Enadeghe's windshield. You cannot "batter" a windshield; you can only batter another person. *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 333 (2007) ("Battery is the unauthorized touching of another person.").

¶ 84    Count I, the negligence count, contained the following allegations, which we have previously summarized but which bear repeating:

> 1. Dahms was a pedestrian near 310 South Clinton Street in Chicago;
>
> 2. Enadeghe was in a motor vehicle at the same location;
>
> 3. Enadeghe was peacefully conducting himself;
>
> 4. Dahms's briefcase made contact with the vehicle, causing damage to the windshield;
>
> 5. Enadeghe got out of the vehicle and asked Dahms to pay for the damage to his windshield;
>
> 6. Dahms refused to pay for the damage;
>
> 7. Dahms physically struck Enadeghe with a briefcase, knocking Enadeghe unconscious and causing him to fall to the ground.

¶ 85    Count I concludes as follows with paragraphs 8 and 9, as follows verbatim:

> "8. On October 10, 2011, defendant, CHARLES DAHMS, *was negligent in one or more of the following ways*:
>
>> a) Made physical actions with his hands and fists toward plaintiff;
>>
>> b) Swung a briefcase in close proximity to the body of the plaintiff;
>
> and
>
>> c) Failed to warn of one or more of *these* negligent acts or
>
> omission[s].
>
> 9.  As a proximate result of one or more of *these* negligent acts or omissions, plaintiff, TERRY ENADEGHE, suffered injuries—both temporary and permanent—to his personal and pecuniary interests." (Emphases added.)

¶ 86    There is no allegation of property damage in this count, either.

¶ 87    The negligence allegations in paragraph 8 obviously pertain to the physical, face-to-face encounter between Dahms and Enadeghe, and not to what happened while Enadeghe was operating his car and Dahms was a pedestrian. Under no plausible reading of paragraph 8 could we find that they refer to the damaging of the windshield that preceded the later physical confrontation on the street.

¶ 88    And paragraph 9 is tied to paragraph 8. The "injuries" alleged by Enadeghe in paragraph 9 pertain to "these" negligent acts or omissions—that is, the negligence described in the preceding paragraph 8, which we have just determined cannot possibly be read as describing the act of damaging Enadeghe's windshield or any other property. We could not possibly read the "injuries" alleged by Enadeghe to include damage to his windshield.

¶ 89     While it is true that the complaint, in its narrative of the events of that day, describes Dahms's briefcase impacting Enadeghe's windshield, it does not automatically follow that Enadeghe sued Dahms over that broken windshield, and the "injuries" alleged by Enadeghe clearly do not include the broken windshield. There is no basis for finding a property damage claim in this complaint. We read an underlying complaint liberally in favor of finding coverage (see *Valley Forge Insurance Co.*, 223 Ill. 2d at 363), but that does not include inventing claims that do not exist. We do not find a basis for imposing a duty to defend on Country Mutual for a property damage claim, when such a claim is not alleged in the complaint.

¶ 90                              F. Motion Taken With the Case

¶ 91     On January 19, 2016, Dahms filed a motion to supplement the procedural history contained in the petition for rehearing. Dahms informs us that Enadeghe has voluntarily dismissed the battery count in the Tort Case, leaving only the negligence count.

¶ 92     We took Dahms's motion with the case. We now grant the motion. But this information does not alter our analysis.

¶ 93     Dahms relies on Enadeghe's amended pleading in the Tort Case as additional support for his argument that none of the policy exclusions apply to claims of "negligence." But none of that changes the fact that, *independent* of whatever may transpire in the Tort Case, Dahms has been convicted of aggravated battery for the conduct that spawned the Tort Case, and the existence of that conviction places Dahms's conduct squarely within the policy exclusion for criminal acts. Our holding is not based, in any way, on the machinations in the Tort Case. This supplemental information has no bearing on our decision.

¶ 94                              III. CONCLUSION

¶ 95     We agree with the circuit court that Country Mutual initially owed a duty to defend Dahms in the underlying Tort Case, but we disagree that the trigger date for this duty was the date when Dahms filed his affirmative defense of self-defense. We hold that the duty to defend arose when Enadeghe filed his complaint in the Tort Case on October 9, 2012. We thus affirm this portion of the circuit court's May 2, 2014 judgment as modified.

¶ 96     We further hold that Country Mutual's duty to defend terminated upon Dahms's conviction for aggravated battery on March 20, 2013. The circuit's May 2, 2014 judgment is reversed to the extent it did not limit the duty to defend to this date.

¶ 97     Motion to supplement procedural history granted.

¶ 98     Affirmed in part as modified, reversed in part.